IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TRAVIS AND JESSICA FRITZ as Third Party Beneficiaries of LAXMIJI, LLC individually and LAXMIJI, LLC d/b/a MOUNTAIN VISTA INN & SUITES, BHARAT PATEL individually and BHARAT PATEL d/b/a MOUNTAIN VISTA | ) ) ) ) ) ) ) ) ) | Docket No. 3:17-CV-433 **DISTRICT JUDGE THOMAS A. VARLAN** **CHIEF MAGISTRATE JUDGE H. BRUCE GUYTON** |
| INN & SUITES, JAGRUTI PATEL, | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| LIBERTY SURPLUS INSURANCE CORPORATION and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF KENNETH M. SUGGS

1.     I am an attorney representing the Plaintiffs in the above-captioned matter.

2.     I make this declaration pursuant to 28 U.S.C. § 1746 in support of Plaintiffs'

Motion for Partial Summary Judgment.

3.     Attached as Exhibit 1 is a true and correct copy of a report of the Pigeon

Force Fire Department received by Plaintiffs' counsel, dated February 15, 2014.

4.     Attached as Exhibit 2 is a true and correct copy of the expert report of

Timothy R. McAuley, M.S., Ph.D., dated February 15, 2019.

5.     Attached as Exhibit 3 is a true and correct copy of a report of the Pigeon

Force Police Department received by Plaintiffs' counsel, dated February 15, 2014.

EXHIBIT 1

6.      Attached as Exhibit 4 is a true and correct copy of a commercial general liability policy in Plaintiffs' counsel's possession issued by St. Paul Fire and Marine to Community Associations, PG, Inc., with Laxmiji, Inc. as an additional insured, effective as to Laxmiji, Inc. from 6/28/13 to 6/28/14.

7.      Attached as Exhibit 5 is a true and correct copy of a certificate of good standing of Community Associations PG, Inc. issued by the Illinois Secretary of State, dated April 3, 2019.

8.      Attached as Exhibit 6 is a true and correct copy of correspondence from Amy Worrell Sterling to Plaintiffs' counsel containing revised answers to interrogatories propounded by Jessica Fritz, dated March 4, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>April 3, 2019</u>                    <u>/s/ Kenneth M. Suggs</u>

Kenneth M. Suggs

2

# EXHIBIT 1 TO SUGGS DECLARATION

## A

| 78133 | TN | MM 02 | DD 15 | YYYY 2014 | 001 | 14-0000150 | 000 | ☐ Delete ☒ Change ☐ No Activity | NFIRS -1 Basic |
|---|---|---|---|---|---|---|---|---|---|
| FDID ★ | State ★ | Incident Date ★ | | | Station | Incident Number ★ | Exposure ★ | | |

## B Location*

☐ Check this box to indicate that the address for this incident is provided on the Wildland Fire Module in Section B "Alternative Location Specification". Use only for Wildland fires.  Census Tract [____]-[____]

☒ Street address
☐ Intersection
☐ In front of
☐ Rear of
☐ Adjacent to
☐ Directions

| | 2647 | | Parkway | | | |
|---|---|---|---|---|---|---|
| | Number/Milepost | Prefix | Street or Highway | | Street Type | Suffix |

| | Pigeon Forge | | TN | 37868 | - | 0010 |
|---|---|---|---|---|---|---|
| Apt./Suite/Room | City | | State | Zip Code | | |

Cross street or directions, as applicable

## C Incident Type ★

| 424 | Carbon monoxide incident |
|---|---|
| Incident Type | |

## D Aid Given or Received ★

1 ☐ Mutual aid received
2 ☐ Automatic aid recv.
3 ☐ Mutual aid given
4 ☐ Automatic aid given
5 ☐ Other aid given
N ☒ None

Their FDID | Their State

Their Incident Number

## E1 Date & Times

Midnight is 0000

Check boxes if dates are the same as Alarm Date.

| | | Month | Day | Year | Hr Min Sec |
|---|---|---|---|---|---|
| | ALARM always required | | | | |
| | Alarm ★ | 02 | 15 | 2014 | 10:41:38 |
| | ARRIVAL required, unless canceled or did not arrive | | | | |
| ☒ | Arrival ★ | 02 | 15 | 2014 | 10:42:23 |
| | CONTROLLED Optional, Except for wildland fires | | | | |
| ☐ | Controlled | | | | |
| | LAST UNIT CLEARED, required except for wildland fires | | | | |
| ☒ | Last Unit Cleared | 02 | 15 | 2014 | 12:27:47 |

## E2 Shift & Alarms

Local Option

| A | CITY1 |
|---|---|
| Shift or Platoon | Alarms | District |

## E3 Special Studies

Local Option

| Special Study ID# | Special Study Value |
|---|---|

## F Actions Taken ★

| 86 | Investigate |
|---|---|
| Primary Action Taken (1) | |

| 53 | Evacuate area |
|---|---|
| Additional Action Taken (2) | |

| 51 | Ventilate |
|---|---|
| Additional Action Taken (3) | |

## G1 Resources ★

☒ Check this box and skip this section if an Apparatus or Personnel form is used.

| | Apparatus | Personnel |
|---|---|---|
| Suppression | | |
| EMS | | |
| Other | 0002 | 0007 |

☐ Check box if resource counts include aid received resources.

## G2 Estimated Dollar Losses & Values

LOSSES: Required for all fires if known. Optional for non fires. None

| Property $ | | 000 | , | 000 | ☐ |
|---|---|---|---|---|---|
| Contents $ | | 000 | , | 000 | ☐ |

PRE-INCIDENT VALUE: Optional

| Property $ | | 000 | , | 000 | ☐ |
|---|---|---|---|---|---|
| Contents $ | | 000 | , | 000 | ☐ |

## Completed Modules

☐ Fire-2
☐ Structure-3
☐ Civil Fire Cas.-4
☐ Fire Serv. Cas.-5
☒ EMS-6
☐ HazMat-7
☐ Wildland Fire-8
☒ Apparatus-9
☒ Personnel-10
☐ Arson-11

## H1 ★ Casualties ☐ None

| | Deaths | Injuries |
|---|---|---|
| Fire Service | | |
| Civilian | | |

## H2 Detector

Required for Confined Fires.

1 ☐ Detector alerted occupants
2 ☐ Detector did not alert them
U ☐ Unknown

## H3 Hazardous Materials Release

N ☐ None
1 ☐ Natural Gas: slow leak, no evacuation or HazMat actions
2 ☐ Propane gas: <21 lb. tank (as in home BBQ grill)
3 ☐ Gasoline: vehicle fuel tank or portable container
4 ☐ Kerosene: fuel burning equipment or portable storage
5 ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable
6 ☐ Household solvents: home/office spill, cleanup only
7 ☐ Motor Oil: from engine or portable container
8 ☐ Paint: from paint cans totaling < 55 gallons
0 ☐ Other: Special HazMat actions required or spill > 55gal., Please complete the HazMat form

## I Mixed Use Property

NN ☒ Not Mixed
10 ☐ Assembly use
20 ☐ Education use
33 ☐ Medical use
40 ☐ Residential use
51 ☐ Row of stores
53 ☐ Enclosed mall
58 ☐ Bus. & Residential
59 ☐ Office use
60 ☐ Industrial use
63 ☐ Military use
65 ☐ Farm use
00 ☐ Other mixed use

## J Property Use ★   Structures

131 ☐ Church, place of worship
161 ☐ Restaurant or cafeteria
162 ☐ Bar/Tavern or nightclub
213 ☐ Elementary school or kindergarten
215 ☐ High school or junior high
241 ☐ College, adult education
311 ☐ Care facility for the aged
331 ☐ Hospital

341 ☐ Clinic, clinic type infirmary
342 ☐ Doctor/dentist office
361 ☐ Prison or jail, not juvenile
419 ☐ 1-or 2-family dwelling
429 ☐ Multi-family dwelling
439 ☐ Rooming/boarding house
449 ☒ Commercial hotel or motel
459 ☐ Residential, board and care
464 ☐ Dormitory/barracks
519 ☐ Food and beverage sales

539 ☐ Household goods, sales, repairs
579 ☐ Motor vehicle/boat sales/repair
571 ☐ Gas or service station
599 ☐ Business office
615 ☐ Electric generating plant
629 ☐ Laboratory/science lab
700 ☐ Manufacturing plant
819 ☐ Livestock/poultry storage (barn)
882 ☐ Non-residential parking garage
891 ☐ Warehouse

### Outside

124 ☐ Playground or park
655 ☐ Crops or orchard
669 ☐ Forest (timberland)
807 ☐ Outdoor storage area
919 ☐ Dump or sanitary landfill
931 ☐ Open land or field

936 ☐ Vacant lot
938 ☐ Graded/care for plot of land
946 ☐ Lake, river, stream
951 ☐ Railroad right of way
960 ☐ Other street
961 ☐ Highway/divided highway
962 ☐ Residential street/driveway

981 ☐ Construction site
984 ☐ Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

Property Use 449

Hotel/motel, commercial

NFIRS-1 Revision 03/11/99

## K1  Person/Entity Involved
Local Option

Business name (if applicable) | Area Code | Phone Number

☐ Check This Box if same address as incident location. Then skip the three duplicate address lines.

Mr.,Ms., Mrs. | First Name | MI | Last Name | Suffix

Number | Prefix | Street or Highway | Street Type | Suffix

Post Office Box | Apt./Suite/Room | City

State | Zip Code

☐ More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary

## K2  Owner
☐ Same as person involved? Then check this box and skip The rest of this section.
Local Option

Business name (if Applicable): Mountain Vista Inn & Suites | Area Code 865 - 908 - 6949 Phone Number

☐ Check this box if same address as incident location. Then skip the three duplicate address lines.

Mr.,Ms., Mrs. | First Name BERT | MI | Last Name PATEL | Suffix

Number | Prefix | Street or Highway | Street Type | Suffix

Post Office Box P.O. Box 10 | Apt./Suite/Room | City Pigeon Forge

State TN | Zip Code 37868 - 0010

## L  Remarks
Local Option

Dispatched to a EMS call with SCAS # 12 in room 108 at the stated address to 2 patients having chest pain, dizziness and arm numbness. On scene FF/ EMT-P Huskey ,FF/ EMT-IV'S Morgan and Law started assessing the patients. A call was ran recently too the room next door . Captain Brackins advised FF/ Morgan to get the gas meter and check the room. As FF/Morgan entered the room the detector alarmed showing a CO reading of 275 ppm. At this point I ordered all people out of the room. Patient 1 was carried from the room to the front of the building and placed in a clear air area. FF/ LAW was placed over triage area. SCAS # 12 arrived and took patient care. Keys were obtained from the owner and evacuation began E-21 crew went to the 2nd floor finding rooms 208 and 209 with a reading of 60 ppm. E-27 crew went to the 3rd floor with rooms 308 and 309 showing 15 ppm. No room detected anything above the 3rd floor. The east end stairway showed 490ppm. A all call was placed at 11: 06. Inspector Price and Captain Knutsen responded to the scene. Sevier County Utility District was also notified. With all guest out of the building a search began to find the cause. Owner stated their was a gas pool heater in the basement under the rooms. After turning the gas meter off and locked out and tagged out FF/Law, Morgan and Jeffers geared up with SCBA and went to the basement where they found a reading of 560 ppm. The basement, stairway and all rooms were open with a fan placed in the basement stairway for ventilation. After the basement cleared SCUD employee Trenthan, Inspector Price and Captain Knutsen went to the area finding the vent from the pool heated was not installed properly. SCUD employees unhooked and secures the gas line. The guest from room 208 who had already checked out returned with the same complaints. FF/Huskey with SCAS 11 provided pt care pt's refused transport to ER and went POV. A call was placed by the Pigeon Forge Police Dept. to the hospital and advise the guest of room 107 of our findings. Before returning in service hotel owner and staff where giving a document that explained the signs, symptoms, and dangers of carbon monoxide poisoning and where informed to call if any other guest had symptoms. All

## L  Authorization

| | | | | | | |
|---|---|---|---|---|---|---|
| 78133-001 | Brackins, John | CP | E21 | 02 | 15 | 2014 |
| Officer in charge ID | Signature | Position or rank | Assignment | Month | Day | Year |

Check Box if ☒ same as Officer in charge.

| | | | | | | |
|---|---|---|---|---|---|---|
| 78133-001 | Brackins, John | CP | E21 | 02 | 15 | 2014 |
| Member making report ID | Signature | Position or rank | Assignment | Month | Day | Year |

**Narrative:**

Dispatched to a EMS call with SCAS # 12 in room 108 at the stated address to 2 patients having chest pain, dizziness and arm numbness. On scene FF/ EMT-P Huskey ,FF/ EMT-IV'S Morgan and Law started assessing the patients. A call was ran recently too the room next door . Captain Brackins advised FF/ Morgan to get the gas meter and check the room. As FF/Morgan entered the room the detector alarmed showing a CO reading of 275 ppm. At this point I ordered all people out of the room. Patient 1 was carried from the room to the front of the building and placed in a clear air area. FF/ LAW was placed over triage area. SCAS # 12 arrived and took patient care. Keys were obtained from the owner and evacuation began E-21 crew went to the 2nd floor finding rooms 208 and 209 with a reading of 60 ppm. E-27 crew went to the 3rd floor with rooms 308 and 309 showing 15 ppm. No room detected anything above the 3rd floor. The east end stairway showed 490ppm. A all call was placed at 11: 06. Inspector Price and Captain Knutsen responded to the scene. Sevier County Utility District was also notified. With all guest out of the building a search began to find the cause. Owner stated their was a gas pool heater in the basement under the rooms. After turning the gas meter off and locked out and tagged out FF/Law, Morgan and Jeffers geared up with SCBA and went to the basement where they found a reading of 560 ppm. The basement, stairway and all rooms were open with a fan placed in the basement stairway for ventilation. After the basement cleared SCUD employee Trenthan, Inspector Price and Captain Knutsen went to the area finding the vent from the pool heated was not installed properly. SCUD employees unhooked and secures the gas line. The guest from room 208 who had already checked out returned with the same complaints. FF/Huskey with SCAS 11 provided pt care pt's refused transport to ER and went POV. A call was placed by the Pigeon Forge Police Dept. to the hospital and advise the guest of room 107 of our findings. Before returning in service hotel owner and staff where giving a document that explained the signs, symptoms, and dangers of carbon monoxide poisoning and where informed to call if any other guest had symptoms. All rooms were cleared before any guest were allowed to return to the building. E-21 & 27 returned to service.

---

02/25/2014 11:45:43 cknutsen

02-25-2014
Report Released To
Bert Patel

---

07/16/2015 11:36:48 rprice

Janet, Jenner & Suggs, LLC
Attorney At Law
Report Released
Requested a Certified Copy of Report # 14-0000150-000
Report was sent via United States Postal Service to:
Janet, Jenner & Suggs, LLC
1777 Reisterstown Road Suite 165
Baltimore, Maryland 21208
Report Sent By Jared Maples

Certified y

Tony L. Watson Fire Chief

JyW

7-20-14

| A | | MM DD YYYY | | | | | | NFIRS – 9 |
|---|---|---|---|---|---|---|---|---|
| 78133<br>FDID ★ | TN<br>State ★ | 2 15 2014<br>Incident Date ★ | 001<br>Station | 14-0000150<br>Incident Number ★ | 000<br>Exposure ★ | ☐ Delete<br>☒ Change | | Apparatus or<br>Resources |

| B Apparatus or ★<br>Resource | Date and Times<br>Check if same as alarm date<br>Month Day Year Hour Min | Sent<br>☒ | Number<br>of ★<br>People | Use<br>Check ONE box for each apparatus to indicate its main use at the incident. | Actions Taken |
|---|---|---|---|---|---|
| **1** ID E21<br>Type 11 | Dispatch ☒ 2 15 2014 10:41<br>Arrival ☒ 2 15 2014 10:42<br>Clear ☒ 2 15 2014 12:27 | ☒ | 4 | ☐ Suppression<br>☐ EMS<br>☒ Other | ⌐¬ ⌐¬ |
| **2** ID E27<br>Type 11 | Dispatch ☒ 2 15 2014 10:41<br>Arrival ☒ 2 15 2014 10:47<br>Clear ☒ 2 15 2014 12:25 | ☒ | 3 | ☐ Suppression<br>☐ EMS<br>☒ Other | ⌐¬ ⌐¬ |
| **3** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **4** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **5** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **6** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **7** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **8** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |
| **9** ID<br>Type | Dispatch ☐<br>Arrival ☐<br>Clear ☐ | ☐ | | ☐ Suppression<br>☐ EMS<br>☐ Other | ⌐¬ ⌐¬ |

## Type of Apparatus or Resources

**Ground Fire Suppression**
11 Engine
12 Truck or aerial
13 Quint
14 Tanker & pumper combination
16 Brush truck
17 ARF (Aircraft Rescue and Firefighting)
10 Ground fire suppression, other

**Heavy Ground Equipment**
21 Dozer or plow
22 Tractor
24 Tanker or tender
20 Heavy equipment, other

**Aircraft**
41 Aircraft: fixed wing tanker
42 Helitanker
43 Helicopter
40 Aircraft, other

**Marine Equipment**
51 Fire boat with pump
52 Boat, no pump
50 Marine apparatus, other

**Support Equipment**
61 Breathing apparatus support
62 Light and air unit
60 Support apparatus, other

**Medical & Rescue**
71 Rescue unit
72 Urban Search & rescue unit
73 High angle rescue unit
75 BLS unit
76 ALS unit
70 Medical and rescue unit, other

More Apparatus?
Use Additional
Sheets

**Other**
91 Mobile command post
92 Chief officer car
93 HazMat unit
94 Type 1 hand crew
95 Type 2 hand crew
99 Privately owned vehicle
00 Other apparatus/resource

NN None
UU Undetermined

NFIRS-9 Revision 11/17/98

Pigeon Forge Fire Department                                        78133   02/15/2014   14-0000150

# EXHIBIT 2 TO SUGGS DECLARATION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **TRAVIS AND JESSICA FRITZ** | ) | **Docket No. 3:17-CV-433** |
| **as Third Party Beneficiaries of** | ) | |
| **LAXMIJI, LLC individually and** | ) | |
| **LAXMIJI, LLC d/b/a MOUNTAIN** | ) | |
| **VISTA INN & SUITES, BHARAT** | ) | |
| **PATEL individually and BHARAT** | ) | **CHIEF DISTRICT JUDGE VARLAN** |
| **PATEL d/b/a MOUNTAIN VISTA** | ) | **MAGISTRATE JUDGE GUYTON** |
| **INN & SUITES, JAGRUTI PATEL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ST. PAUL FIRE AND MARINE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS EXPERT WITNESS REPORT OF TIMOTHY MCAULEY
PURSUANT TO RULE 26(a)(2) FRCP**

I am Timothy R. McAuley, MS, PhD. I have been asked by the law firms of Janet, Janet & Suggs and Gilreath and Associates to serve as an expert witness in this matter.

I received my Bachelor of Science degree in Biochemistry from the College of St. Rose in 2001, a Master's degree in Chemistry for Clarkson University in 2003, and my PhD in Environment Science and Engineering from Clarkson University in 2006. I have extensive experience and a renowned expertise in investigation of pollution events resulting from my work domestically and internationally becoming a renowned expert in air quality human health risk and exposure assessment.

Among my present activities are:

) Founder, Chairman & CEO, Consulting for Health, Air, Nature, & a Greener Environment, LLC (current)

) Board of Directors, Air & Waste Management Association (former)

) Member, Indoor Environmental Standards Organization Research & Consensus Body (current)

) Treasurer, International Society for Exposure Science (former)

) Member, Transportation Research Board, Transportation and Air Quality Committee, National Academy of Science (former)

For a further exposition of my qualifications, please refer to my CV, attached hereto.

It is my understanding that the dispute in this litigation revolves around the application of a "pollution exclusion" in an insurance policy. I have been asked to give my expert opinion on whether the incident in question falls into the definition of pollution as it would be understood in the environmental exposure science community.

I have reviewed the report of the Pigeon Forge Fire Department dated 02/15/2014, the

Sevier County Utility District Odor Report dated 2/15/2014, and the Pigeon Forge Police

Department Report dated 2/15/2014. Based on those reports the facts are as follows.

The Fritz family was housed in Room 108 of the Mountain Vista Inn & Suites. Mrs. Fritz

became ill, EMS was contacted, and in turn the Fire Department became involved. The Fire

Department determined that carbon monoxide levels in Room 108 were 275 ppm. The firemen

then checked the rooms above 108. Rooms 208 and 209 had CO levels of 60 ppm and in rooms

308 and 309 the levels were 15 ppm. No CO at all was detected above the third floor.

The source of the carbon monoxide was found to be in a basement below room 108,

where the CO reading was 560 ppm. The Sevier County Utility District determined the source of

the CO was a spa heater in the basement.

There is no record of any guest complaints or injuries in the days before February 15,

2014. The only other complaint of symptomatology was from a guest in the room adjacent to the

Fritzes.

It is clear that the event which injured Mrs. Fritz was limited in scope, to a few rooms of

the motel, and in time, to the day in question. There is no allegation that the carbon monoxide

escaped into the entire motel, or into the surrounding environment. The impact was minimal in

terms of the number of persons involved, although unfortunately not in severity to Mrs. Fritz.

I recognize that it is not within my purview to interpret the insurance policy in question.

However, I reviewed the insurance policy to determine if carbon monoxide is specifically

defined as a pollutant. I found specification of lead, mold, fungi, bacteria, silica, and asbestos as

pollutants. I found no mention of carbon monoxide in the policy. None of the defined pollutants

are gaseous, nor are they the type of substances, unlike carbon monoxide, that escape from faulty or poorly maintained equipment.

Environmental exposure scientists are called upon to assess the effects of various substances under a variety of conditions, which can include conducting measurements and/or assessing health impacts related to an environmental contaminant(s). Within the community of environmental exposure science, a limited release such as this would not be considered a pollution event given that gases are typically quickly diluted and migrated upon ventilation and do not result in large impacts but tend to remain very minute and in small volumes. Pollution events are understood in the exposure science community as the addition of a substance, that is put into the environment at a rate faster than it can be dispersed, diluted, decomposed, recycled, and/or held in a harmless form. Therefore, based on this understanding, typical pollution events that fit the definition of a true pollution event would include examples, such as an oil spill, release of 1800 gallons of sulphuric acid, and an underground migration of toxic waste.

Based on these facts, it is my opinion, to a reasonable degree of scientific certainty, that the event that injured Mrs. Fritz was not pollution, in the sense understood by the relevant scientific community.

My fees for expert consultation are $350 per hour for all work. My charges for 2.5 hrs of work to date are covered under the retainer fee of $2500.

_____

Timothy R. McAuley, MS, PhD.

February 15, 2019

# EXHIBIT 3 TO SUGGS DECLARATION

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. Date Reported 02152014 | 2. Grid 116 | 3. Shift 1st Trf | 4. Reporting Officer Name VANCE | | 5. ID # 732 | 6. Dispatch Time 1040 | 7. Arrival Time 1042 | 8. Event # 1402153096 |

| | | | | | |
|---|---|---|---|---|---|
| 9. Earliest DateOcc. 02152014 | 10. Earliest Time Occ. 0827 | 11. Latest Date Occ. 02152014 | 12. Latest Time Occ. 1045 | 13. Bias Motivation Involved YES NO TYPE | CODE |

| | | | |
|---|---|---|---|
| 14. Offense/Incident Type INCIDENT | 15. UCR/TIBRS Code | 16. Location of Offense/Incident 2647 PARKWAY MOUNTAIN VISTA MOTEL, PIGEON FORGE, TN | 17. Status |

**PERSON ALL**

| | |
|---|---|
| 18a. #1 Name (First Middle Last) or Business V☐ W☐ C☐ TRAVIS W. FRITZ | 18b. #2 Name (First Middle Last) or Business V☐ W☐ C☐ |
| 19a. Address (Street, Apt. No.) PO BOX 2252 | 19b. Address (Street, Apt. No.) |
| 20a. City, State, Zip Code ABINGDON, VA. 24212 | 20b. City, State, Zip Code |
| 21a. Home Phone ( 276 ) 608 - 0241 | 22a. Business Phone ( NA ) - | 21b. Home Phone ( ) - | 22b. Business Phone ( ) - |
| 23a. Employer SELF | 23b. Employer |
| 25a. Address (Street, Apt. No.) | 25b. Address (Street, Apt. No.) |
| 26a. City, State, Zip Code | 26b. City, State, Zip Code |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 27a. Race White | 28a. Sex Male | 29a. DOB 04201976 | 30a. OLN | 31a. State VA | 27b. Race | 28b. Sex | 29b. DOB | 30b. OLN | 31b. State |

| | | | | |
|---|---|---|---|---|
| 32a. Victim Type | 33a. Victim/Offender Relationship OFF. #1 OFF. #2 | 32b. Victim Type | 33b. Victim/Offender Relationship OFF. #1 OFF. #2 |

| | | | |
|---|---|---|---|
| 34a. College Student YES☐ NO☐ | 35a. Name of College/University | 34b. College Student YES☐ NO☐ | 35b. Name of College/University |

| | | | |
|---|---|---|---|
| 36a. Injury YES☐ NO☑ If yes, select up to five types. | 37a. Injury Type ☐ None ☐ Broken bones ☐ Poss. Int. Injuries ☐ Severe Lacerations ☑ Minor Injuries ☐ Other Major Injury ☐ Loss of Teeth ☐ Unconsciousness | 36b. Injury YES☐ NO☐ If yes, select up to five types. | 37b. Injury Type ☐ None ☐ Broken bones ☐ Poss. Int. Injuries ☐ Severe Lacerations ☐ Minor Injuries ☐ Other Major Injury ☐ Loss of Teeth ☐ Unconsciousness |

**SUSPECT / OFFENDER**

| | |
|---|---|
| 38a. #1 Name (First Middle Last) | 38b. #2 Name (First Middle Last) |
| 39a. Address (Street, Apt. No.) | 39b. Address (Street, Apt. No.) |
| 40a. City, State, Zip Code | 41a. Gun Permit YES☐ NO☐ | 40b. City, State, Zip Code | 41b. Gun Permit YES☐ NO☐ |
| 42a. Home Phone ( ) - | 43a. Business Phone ( ) - | 42b. Home Phone ( ) - | 43b. Business Phone ( ) - |
| 44a. Employer | 44b. Employer |
| 46a. Address (Street, Apt. No.) | 46b. Address (Street, Apt. No.) |
| 47a. City, State, Zip Code | 47b. City, State, Zip Code |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 48a. Race | 49a. Sex | 50a. DOB | 51a. OLN | 52a. State | 48b. Race | 49b. Sex | 50b. DOB | 51b. OLN | 52b. State |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 53a. Height Feet Inches | 54a. Weight Lbs. | 55a. Hair | 56a. Eyes | 57a. Arrested YES☐ NO☐ | 53b. Height Feet Inches | 54b. Weight Lbs. | 55b. Hair | 56b. Eyes | 57b. Arrested YES☐ NO☐ |

| | |
|---|---|
| 58a. Offender Used (check all that apply) Alcohol☐ Computer Equipment☐ Drugs☐ Not Applicable☐ | 58b. Offender Used (check all that apply) Alcohol☐ Computer Equipment☐ Drugs☐ Not Applicable☐ |

**CRIME**

| | | |
|---|---|---|
| 59. Forced Entry? YES☐ NO☐ | 60. Point of: Entry: (1) (2) Exit: (1) (2) | 61. Type Location Hotel / Motel |
| 62. Suspect Actions (1) (2) (3) | | 63. Tools Used (1) (2) |
| 64. Security Used (1) (2) | 65. Lighting Conditions | 66. Weather Conditions | 67. Did the incident involve a home invasion? YES☐ NO☐ |

**ELEMENTS**

| | | |
|---|---|---|
| 68. Type of Force / Weapon Involved (select up to three; enter "A" on line if firearm is automatic) (1) (2) (3) | 71. Domestic YES☐ NO☐ | 72. Action Taken |
| 69. Gang Activity ☐ Juvenile Gang ☐ Other Gang ☐ Juvenile & Other ☐ No Gang Activity | Type Gang #1 Gang #2 | Name | 73. Yes No ☐☐ Transported to Hospital ☐☐ Restraining Order ☐☐ Order of Protection ☐☐ Repeat Call ☐☐ Offender present on Officer arrival ☐☐ Officer Injured |
| 70. Type of Criminal Activity (select up to three) (1) (2) (3) | | 74. Did the incident involve a violation of an Order of Protection (for Domestic Violence incidents only) YES☐ NO☐ |

Officer Signature _mal las_ Date 02/15/14

I certify this to be a true and exact copy of the original document.

_[signature]_ Notary Public

My Commission Expires 02-21-17

PAGE 1 OF 2

03-10-14

LORI L. BOZEMAN STATE OF TENNESSEE NOTARY PUBLIC

# PIGEON FORGE POLICE DEPARTMENT

**2 - 2** Event # 1402153096

J U V E N I L E □

### 75. Narrative

ON FEBRUARY 15, 2014, AT APPROXIMATELY 10:42 AM, I ARRIVED AT MOUNTAIN VISTA MOTEL (ROOM 108) ON A REPORT OF DIZZINESS AND CHEST PAIN. UPON MY ARRIVAL I SPOKE WITH THE COMPLAINANT, TRAVIS FRITZ. MR. FRITZ STATED THAT HE AND HIS WIFE (JESSICA FRITZ- DOB-03/30/1978) HAD BEEN FEELING SICK. PARAMEDICS AND THE PIGEON FORGE FIRE DEPARTMENT DID ARRIVE AND TREATED BOTH INDIVIDUALS. REPRESENTATIVES FROM THE FIRE DEPARTMENT MEASURED HIGH READINGS OF CARBON MONOXIDE IN THE ROOM. THE MOTEL WAS EVACUATED AT THAT TIME (APPROXIMATELY 28 ROOMS). MRS. FRITZ WAS TRANSPORTED BY SEVIER AMBULANCE SERVICE TO LECONTE MEDICAL CENTER. MR. FRITZ DECLINED.

EARLIER THE SAME MORNING (AT APPROXIMATELY 8:27 AM) I ARRIVED AT THE ROOM NEXT DOOR (107) ON A COMPLAINT FROM A MR. JERRY FULTS THAT HIS 11 YEAR OLD DAUGHTER HAD ALMOST PASSED OUT WHEN SHE STOOD UP. PARAMEDICS DID ARRIVE AT THAT TIME TO TREAT THE INDIVIDUAL. THERE WAS NO INDICATION AT THAT TIME THAT THERE WAS ANY PROBLEM AT THE MOTEL. MR. FULTS TRANSPORTED HIS DAUGHTER TO LECONTE MEDICAL CENTER.

WHILE STANDING OUTSIDE THE MOTEL, A MR. JOHN PEEPLES (DOB-6/19/1987, GA DL# 3421 HOLLOW OAK DR. REX, GA. 30273 PH#404-626-3768) CAME UP TO ME AND INFORMED ME THAT HE AND HIS WIFE (FAITH PEEPLES DOB- 2/05/1987) WERE STAYING IN ROOM 208 AND THEY HAD FELT DIZZY, AND THEIR CHEST HURT AS WELL. PARAMEDICS DID TREAT MR. PEEPLES AND HIS WIFE AT THE SCENE.

REPRESENTATIVES OF THE FIRE DEPARTMENT STATED THAT THE CARBON MONOXIDE WAS COMING FROM A FURNACE IN THE BASEMENT. AT APPROXIMATELY 11:50 AM THE FIRE DEPARTMENT DETERMINED THE MOTEL SAFE FOR OCCUPANCY AND IT WAS TURNED BACK OVER TO MANAGEMENT OF THE MOTEL.

*I certify this to be a true and exact copy of the original document.*

03-10-14

Notary Public

PAGE 2 of 2

My Commission Expires: 02-21-17

| 99. CODE | QTY. | ITEM | BRAND | MODEL | SERIAL NUMBER OTHER IDENTIFIER | COLOR | VALUE | VICTIM # |
|---|---|---|---|---|---|---|---|---|
| / | | | | | | | $ | |
| | | | | | | | $ | |

**95. Evidence Collected**
☐ None ☐ Fingerprints ☐ Other Prints ☐ Weapon / Tools ☐ Vehicle ☐ Photos ☐ Hair ☐ Stains ☐ Blood / Semen ☐ Other:

**100. Total Property Value This Page** $

**96. Video Tape:** YES ☐ NO ☐  **97. Unit No.**  **98. Disposition of Evidence**

**VEHICLE #1**

76. Owner's Name (First Middle Last)

77. Owner's Address

| 78. Year | 79. Make | 80. Model | 81. Style | 82. VIN | | 83. License No. | 84. State | 85. NCIC No. |
|---|---|---|---|---|---|---|---|---|

86. Color /

87. Identifying Characteristics

88. Susp. Veh. YES ☐ NO ☐

89. Towing Company

90. Location Towed

91. Code

92. Estimated Loss or Damages to Vehicle Only $

**DISPOSITION**

**93. Solvability Factors**

| | Points | | Points |
|---|---|---|---|
| ☐ Suspect Arrested | 10 | ☐ Significant Evidence Obtained | 2 |
| ☐ Suspect Named | 10 | ☐ Elements of Crime Present | 2 |
| ☐ Suspect Can Be Located | 5 | ☐ Major Injury or Rape | 5 |
| ☐ Suspect Can Be Described | 3 | ☐ Witness to the Crime | 3 |
| ☐ Suspect Can Be Identified | 7 | ☐ Significant MO | 5 |
| ☐ Suspect Vehicle Identified | 6 | | |
| ☐ Property Traceable | 2 | Total Solvability Points | |

**94. Case Status Disposition**
☐ Cleared By Adult Arrest
☐ Cleared By Adult Exceptional Means
☐ Cleared By Juvenile Arrest
☐ Cleared By Juvenile Exceptional Means
☒ Other: INCIDENT
☐ Pending / Active
☐ Unfounded
☐ Advised of Warrant Process and Arrest Option
☐ Entered Personal Property In NCIC / TCIC

**REVIEW**

Officer Signature

Date 02/15/2014

I have reviewed this report and determined that the reporting officer has completed a thorough report consistent with all policies, directives, and procedures concerning investigations.

Approving Supervisor

Date 2-15-14

NCIC Entries Made By

Date

Recid Removal Made By

Date

PEPD001-02

# EXHIBIT 4 TO SUGGS DECLARATION



## "Lessor's Risk Only Liability" Umbrella Program

## Evidence of Insurance & Purchasing Group Membership

**Producer:** Appalachian Underwriters, Inc. (Sarasota)
7301 Merchant Court, Suite B
Sarasota, FL 34240

| NAMED INSURED: | PROGRAM ADMINISTRATOR: |
|---|---|
| Laxmiji, LLC<br><br>2647 Parkway<br>Pigeon Forge, TN, 37863 | **McGowan Program Administrators**<br>*(A Division of McGowan & Company, Inc.)*<br>Home Office – Old Forge Centre<br>20595 Lorain Road<br>Fairview Park, OH 44126<br>(440) 333-6300 / (440) 333-3214 (Fax)<br>**www.mcgowanins.com** |

| ITEM 1. | **COVERAGE PERIOD:** | Effective 06/28/2013    To 06/28/2014    At 12:01 A.M. Standard Time At Your Mailing Address Shown Above |
|---|---|---|
| | | This Insurance Shall Not Apply To Any Claim, Suit, Or Loss Involving An Occurrence Which Takes Place Outside Of These Dates. |
| | **EVIDENCE NUMBER:** | ZUP14S9493712NF-52908 |

| ITEM 2. | **INSURER:** | A. | $5,000,000 | / $ 5,000,000 | X/S Primary |
|---|---|---|---|---|---|
| | | | St. Paul Fire And Marine Insurance Company | | |

**ITEM 3.     LIMITS OF INSURANCE:**

| | |
|---|---|
| $5,000,000 | **Each Occurrence** (Per Location, Except For Products-Completed Operations Claims, Suits, Or Losses) |
| $5,000,000 | **General Aggregate** (Per Location) |
| $5,000,000 | **Products - Completed Operations Aggregate**<br>(The Products – Completed Operations Aggregate Does Not Apply On A "Per Location" Basis.) |
| $ 50,000,000 | **Policy Aggregate** |

**Regardless of the Number of Insured Locations, Claims Made Or Suits Brought, Claimants, Events Giving Rise To A Covered Loss Under The Policy, Limits And Aggregates Provided By The Policy, And Coverages Provided By The Policy, The Policy Shall Never Pay More Than $50,000,000 In Total.**

**Insured's Self Insured Retention:**     $ 0

**Employer's Liability Retained Limit:**
$   500,000 Bodily Injury By Accident - Each Accident
$   500,000 Bodily Injury By Disease – Policy Limit
$   500,000 Bodily Injury By Disease – Each Employee

**Terrorism Liability Retained Limit:**     $ 1,000,000 Per Occurrence

LROU-EOI-01 (v01.01.2011)                                                                 McGowan & Company, Inc. ©

## ITEM 4. FORMS, TERMS & CONDITIONS ATTACHED AT INCEPTION:

| | |
|---|---|
| Evidence Of Insurance & Purchasing Group Membership | LROU-EOI-01 |
| Schedule Of Named Insureds – Endorsement | LROU-EOI-02 |
| Schedule Of Insured Locations – Endorsement | LROU-EOI-03 |

See Policy Form List [40705 Ed. 5-84] For Other Forms Attached At Inception.

## ITEM 5. WARRANTED UNDERLYING POLICIES & MINIMUM UNDERLYING LIMITS:

Subject To The Other Terms, Conditions, And Exclusions Of This "Evidence Of Insurance & Purchasing Group Membership" And The Policy Of Insurance, This Umbrella Policy Shall Not Apply To Any Claim, Suit, Or Loss Unless: (a) The Insured Purchases An Underlying Policy Of The Type Listed Below; (b) Said Underlying Policy Applies To Said Claim, Suit, Or Loss; (c) Said Underlying Policy Was Issued With – At A Minimum - The Limits Detailed Below; (d) The Insured Keeps Said Underlying Policy In Force At All Times This "Evidence Of Insurance & Purchasing Group Membership" Is In Force; and, (e) Said Underlying Policy Is Marked As "Scheduled Underlying Insurance" In "Item 7." Of This "Evidence Of Insurance & Purchasing Group Membership."

### COMMERCIAL GENERAL LIABILITY

| | |
|---|---|
| $1,000,000 | Per Occurrence, Per Location |
| $2,000,000 | General Aggregate Per Location |
| $1,000,000 | Products/Completed Operations Aggregate |
| $1,000,000 | Personal & Advertising Injury |

GL Policies Covering Multiple Locations Owned By The Insured Must Contain A "Per Location" Aggregate Endorsement.

### AUTOMOBILE LIABILITY

$1,000,000 Combined Single Limit    NO AUTOMOBILE LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS AUTOMOBILE LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### EMPLOYERS LIABILITY

$100,000 Bodily Injury By Accident - Each Accident    NO EMPLOYERS LIABILITY COVERAGE IS PROVIDED BY THIS
$500,000 Bodily Injury By Disease – Policy Limit    UMBRELLA LIABILITY POLICY UNLESS EMPLOYERS LIABILITY IS
$100,000 Bodily Injury By Disease – Each Employee    MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### EMPLOYEE BENEFITS LIABILITY

$1,000,000 Per Claim    NO EMPLOYEE BENEFITS LIABILITY COVERAGE IS PROVIDED BY
$1,000,000 Aggregate    THIS UMBRELLA LIABILITY POLICY UNLESS EMPLOYEE BENEFITS LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### LIQUOR LIABILITY

$1,000,000 Each Common Cause    NO LIQUOR LIABILITY COVERAGE IS PROVIDED BY THIS
$1,000,000 Aggregate    UMBRELLA LIABILITY POLICY UNLESS LIQUOR LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

Liquor Liability Policies Covering Multiple Locations Owned By The Insured Must Contain A "Per Location" Aggregate Endorsement.

## ITEM 5. WARRANTED UNDERLYING POLICIES & MINIMUM UNDERLYING LIMITS:

*(Continued)*

### DIRECTORS & OFFICERS LIABILITY

$1,000,000 Per Claim
$1,000,000 Aggregate

NO DIRECTORS & OFFICERS LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS DIRECTORS & OFFICERS LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### GARAGEKEEPERS LEGAL LIABILITY

$1,000,000 Per Occurrence

NO GARAGEKEEPERS LEGAL LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS GARAGEKEEPERS LEGAL LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### GARAGE LIABILITY

$1,000,000 Per Occurrence

NO GARAGE LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS GARAGE LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### UNINSURED / UNDERINSURED MOTORISTS LIABILITY

$1,000,000 Per Occurrence

NO UNINSURED / UNDERINSURED MOTORISTS LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS UNINSURED / UNDERINSURED MOTORISTS LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

### PESTICIDE OR HERBICIDE APPLICATOR LIABILITY

$1,000,000 Per Occurrence

NO PESTICIDE OR HERBICIDE APPLICATOR LIABILITY COVERAGE IS PROVIDED BY THIS UMBRELLA LIABILITY POLICY UNLESS UNINSURED / UNDERINSURED MOTORISTS LIABILITY IS MARKED AS SCHEDULED UNDERLYING INSURANCE IN "ITEM 7." BELOW.

All Underlying Coverages Must Be Written On An Occurrence Form, Except Employee Benefits Liability. Underlying Carriers Must Be Rated A- / VI Or Better By A.M. Best, Unless A Specific Acceptance Of A Carrier With An A.M. Best Rating Lower Than A- / VI Is Made By The Underwriter.

## ITEM 6. COVERAGE MODIFICATIONS TO TERMS, CONDITIONS & EXCLUSIONS

This Item Supercedes Any Provision In The Policy, Endorsements, "Schedule Of Named Insureds – Endorsement," "Schedule Of Insured Locations – Endorsement," Or This "Evidence Of Insurance & Purchasing Group Membership" Granting Or Restricting Coverage To The Contrary.

☐ Other:

## ITEM 7. SCHEDULED UNDERLYING INSURANCE

The Only **Scheduled Underlying Insurance** Policies Are Those Marked With An "X" Below:

**Policy Type:**

- [X] **General Liability**
- [X] **Hired & Non-Owned Automobile**
- [ ] **Owned Automobile Liability**
- [ ] **Employers Liability**
- [ ] **Employee Benefits Liability**
- [ ] **Liquor Liability**
- [ ] **Directors & Officers Liability**
- [ ] **Garagekeepers Legal Liability**
- [ ] **Garage Liability**
- [ ] **Uninsured / Underinsured Motorists Liability**
- [ ] **Pesticide Or Herbicide Applicator Liability**
- [ ] **Terrorism Liability**
- [ ] **Other:**
- [ ] **Other:**

**Please Be Advised That This Policy Shall Not Apply To Any Claim, Suit Or Loss If Such Claim, Suit Or Loss Is Not Covered By A Scheduled Underlying Insurance Policy Marked With An "X" Above.**

**With Regards Scheduled Underlying Insurance:**

| | |
|---|---|
| **Carriers:** | Per Application On File With Carrier |
| **Limits:** | See SU109 Ed. 03-03 |
| **Premiums:** | Per Application On File With Carrier |
| **Effective Dates:** | Per Application On File With Carrier |

## ITEM 8. SCHEDULE OF NAMED INSUREDS & SCHEDULE OF INSURED LOCATIONS:

See Attached "Schedule Of Named Insureds – Endorsement"     LROU-EOI-02

See Attached "Schedule Of Insured Locations – Endorsement"     LROU-EOI-03

| ITEM 9. | IMPORTANT COVERAGE NOTES & ADDITIONAL TERMS, CONDITIONS & EXCLUSIONS: |
|---|---|

   (1) **THIS INSURANCE DOES <u>NOT</u> APPLY TO ANY <u>ENTITY</u> WHICH DOES <u>NOT</u> APPEAR ON THE ATTACHED "SCHEDULE OF NAMED INSUREDS – ENDORSEMENT."**

   (2) **THIS INSURANCE DOES <u>NOT</u> APPLY TO ANY <u>LOCATION</u> WHICH DOES <u>NOT</u> APPEAR ON THE ATTACHED "SCHEDULE OF INSURED LOCATIONS – ENDORSEMENT."**

   (3) You Must Notify Us If You Add Named Insureds Or Insured Locations. This Policy Does Not Provide Automatic Coverage To Newly-Acquired Premises.

   (4) You Must Notify Us If There Are Changes To The Scheduled Underlying Insurance Policies.

   (5) You Must Notify Us If You Have A Change In Operations Or Exposures Which Increases The Insurance Company's Risk Of Loss.

   (6) Any Term, Condition, Or Exclusion Contained Within The "Evidence Of Insurance & Membership Agreement" Supercedes Any Provision In The Policy, Endorsements, "Schedule Of Named Insureds – Endorsement," Or "Schedule Of  Insured Locations – Endorsement," Granting Or Restricting Coverage To The Contrary.

---

**ITEM 10.  SCHEDULE OF CHARGES**

**Total Premium, Fees, Surcharges & Taxes (If Applicable):  $ 1,700.00**

| | | | |
|---|---|---|---|
| Premium: | $ | 1,190.00 | Charged By Insurance Company |
| Purchasing Group Membership Fee: | $ | 510 | Charged By Purchasing Group |
| Surplus Lines Tax: | $ | | Charged By State |
| Stamping Fee: | $ | | Charged By State |
| Other State Or Municipal Surcharge: | $ | | Charged By State Or Municipality |
| Loss Control Inspection Fee: | $ | 0.00 | Charged By Program Administrator Or Inspection Service |

**Purpose & Effect Of "Application For Insurance & Purchasing Group Membership."**  By Signing An "Application For Insurance & Purchasing Group Membership" (Hereinafter "Application"), Applicant Agreed:  (1) To Become A Member Of Community Associations PG, Inc. (Hereinafter "PG"); (2) To Participate In A Program Of Insurance Designed Exclusively For The Members Of PG; (3) To Accept, Abide By, And Be Bound By The "Terms & Conditions Of Insurance" Posted At www.purchasinggroups.com; (4) To Accept, Abide By, And Be Bound By The "Membership Agreement – Terms & Conditions Of Membership" Posted At www.purchasinggroups.com; (5) To Pay All Premiums (Including Audit And Additional Premiums, If Applicable), Fees (Including Broker & Purchasing Group Membership Fees), And State & Federal Taxes & Surcharges (If Applicable) When Due; (6) That Any Additional Material Supplied By Applicant Or Applicant's Insurance Broker To The Managing General Underwriter For A Given Program Of Insurance Becomes A Material Part Of The Application For Insurance; (7) That The Application Which It Signed Was The Basis Of The Contract [Policy &/Or "Evidence Of Insurance & Purchasing Group Membership" (Hereinafter "EOI")], Whether Or Not Said Application Was/Is Attached To The Policy &/Or EOI; (8) That The Application Is A Material Part Of The Policy &/Or EOI, Whether Or Not It Is Attached To The Policy &/Or EOI; And, (9) That The Application Is Considered Attached To The Policy &/Or EOI For Legal Purposes, Whether Or Not It Is Physically Or Electronically Attached To The Policy &/Or EOI.

**Disclosure Regarding Shared Limits.**  Members Do Not Share Limits And Each Member Is Provided With Its Own Policy &/Or EOI.

**Disclosure Pursuant To Federal Law Regarding Purchasing Groups [U.S.C. 15 3901, Et Seq.]**  PG Is A "Purchasing Group," As Defined Under Federal Law, Formed To Purchase Liability Insurance On A Group Basis For Its Members To Cover The Similar Or Related Liability Exposure(s) To Which The Members Of PG Are Exposed By Virtue Of Their Related, Similar, Or Common Business Or Service.  Members Do Not Share Limits And Each Member Is Provided With Its Own Policy &/Or EOI.

**Disclosure Pursuant To Terrorism Risk Insurance Act Of 2002.**  By Signing Below, Applicant Agrees That It Has Read And Understands The "Disclosure Pursuant To The Terrorism Risk Insurance Act Of 2002" Which Appears At www.purchasinggroups.com

**To Learn More.**  Please Visit www.purchasinggroups.com, Which Contains More Information About Your Purchasing Group And Purchasing Groups, In General, As Well As Your Insurance Coverage, Premiums, Fees, Taxes, The MGUs' Income, And Your Insurance Broker's Income.



**Evidence Number:** ZUP14S9493712NF-52908      **Effective Date:** 06/28/2013

**This "Schedule of Named Insureds - Endorsement" Forms A Part Of The Policy And The "Evidence Of Insurance & Purchasing Group Membership." No Coverage Is Provided By This Policy To Any Insured Which Is Not Listed Below. This Endorsement Supercedes Any Terms In The Policy Or Any Endorsement Granting Coverage To The Contrary.**

Laxmiji, LLC

-d/b/a "Mountain Vista Inn & Suites"



**"LRO" Umbrella Program**

Schedule of Named Insureds - Endorsement

**Evidence Number:** ZUP14S9493712NF-52908          **Effective Date:** 06/28/2013

**This "Schedule of Named Insureds - Endorsement" Forms A Part Of The Policy And The "Evidence Of Insurance & Purchasing Group Membership." No Coverage Is Provided By This Policy To Any Insured Which Is Not Listed Below. This Endorsement Supercedes Any Terms In The Policy Or Any Endorsement Granting Coverage To The Contrary.**

LROU-EOI-02 (St. Paul FAM)(v01.01.2007)

**Evidence Number:** ZUP14S9493712NF-52908        **Effective Date:** 06/28/2013

This "Schedule Of Insured Locations - Endorsement" Forms A Part Of The Policy And The "Evidence Of Insurance & Purchasing Group Membership." This Policy Shall Not Apply To Any Location Which Is Not Listed Below. This Insurance Only Applies To Losses, Claims, Suits, Or Other Proceedings Which Allege "Bodily Injury," "Property Damage," "Personal Injury," Or "Advertising Injury" Arising Out Of The Use, Ownership, Maintenance, Or Operation Of The Locations That Are Listed Below. This Endorsement Supersedes Any Terms In The Policy Or Any Endorsement Granting Coverage To The Contrary.

| | | | | |
|---|---|---|---|---|
| 1 | 2647 Parkway | Pigeon Forge | TN | 37863 |



# TRAVELERS EXCESS CASUALTY AT A GLANCE

In a constantly changing business environment, it makes sense to choose an insurance carrier with fortitude and flexibility to help you solidify your financial position. Travelers has the substance to strengthen your defenses, as well as the acumen to help you make alterations over time. Excess and Umbrella insurance from Travelers enables you to secure your protection with precision. We provide umbrella and excess coverage that enhances your current casualty insurance program - true catastrophic coverage above the current underlying limits. We offer stable and strong capacity, along with excellent service, security and expertise. We are a great way to reinforce your position.

A.M. Best has assigned a rating of A+ (superior) to the claims-paying and/or financial strength of St. Paul Fire and Marine Insurance Company. The claims-paying and/or financial strength category assesses the insurer's ability to meet its financial obligations to its policyholders. The A+ rating is the second highest rating that A.M. Best assigns this category.

## Company Overview
- Second-largest writer of commercial U.S. property-casualty insurance (SNL Statutory Filings. Based on 2009 direct written premium.)
- Second-largest writer of U.S. personal insurance through independent agents (SNL Statutory Filings. Based on 2009 direct written premium.)
- Total assets of approximately $110 billion, shareholders' equity of $27 billion, and total revenue of $25 billion, as of December 31, 2009
- No. 98 on the Fortune 500 list of largest U.S. Companies
- Approximately 30,000 employees
- Representatives in every U.S. state, Canada, Ireland and the U.K.
- Represented by approximately 13,000 independent agencies and brokerages countrywide

## Competitive Advantages
- Considerable financial strength
- Superior depth and breadth of product offerings
- Cutting-edge technology platforms
- Fast, fair, effective claims handling
- Innovative risk control services
- Well-recognized brand names in the personal and commercial insurance marketplace
- Strong distribution presence with broad geographic presence across the U.S.
- Experienced and well-regarded management team
- Strong underwriting culture
- Risk management resources--from guides, technical bulletins, samples, checklists and forms to training in a variety of formats--available at no additional cost to Traveler's customers (www.riskcontrol.com)

385 Washington Street, Saint Paul, MN 55102-1396, 800.356.4098, www.travelers.com

This brochure/web site material is for informational purposes only. All statements herein are subject to the provisions, exclusions and conditions of the applicable policy. For an actual description of all coverages, terms and conditions, refer to the insurance policy. Coverages are subject to individual insureds meeting our underwriting qualifications and to state availability.

NA585 Rev. 7-10
© 2010 The Travelers Indemnity Company. All rights reserved.

# DISCLOSURE NOTICE
# TERRORISM RISK INSURANCE ACT OF 2002

On December 26, 2007, the President of the United States signed into law amendments to the Terrorism Risk Insurance Act of 2002 (the "Act"), which, among other things, extend the Act and expand its scope. The Act establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in the Act) caused by "acts of terrorism". An "act of terrorism" is defined in Section 102(I) of the Act to mean any act that is certified by the Secretary of the Treasury – in concurrence with the Secretary of State and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The federal government's share of compensation for Insured Losses is 85% of the amount of Insured Losses in excess of each Insurer's statutorily established deductible, subject to the "Program Trigger", (as defined in the Act). In no event, however, will the federal government or any Insurer be required to pay any portion of the amount of aggregate Insured Losses occurring in any one year that exceeds $100,000,000,000, provided that such Insurer has met its deductible. If aggregate Insured Losses exceed $100,000,000,000 in any one year, your coverage may therefore be reduced.

The premium charge shown below is for coverage under this policy for insured losses covered by the Act. This terrorism premium does not include any charges for the portion of insured losses covered by the federal government under the Act.

If $0 is shown below for the certified acts of terrorism premium charge, this policy provides such terrorism coverage for no premium charge.

The certified acts of terrorism premium charge shown below applies to all coverage under this policy for Insured Losses covered by the Act that you purchased for a premium charge. For any insuring agreement or coverage part for which you did not purchase such terrorism coverage, this policy may include one or more terrorism exclusions that apply to certified acts of terrorism. Under the federal Terrorism Risk Insurance Program Reauthorization Act of 2007, the applicable definition of certified acts of terrorism no longer requires that the act of terrorism be committed on behalf of a foreign person or foreign interest. Therefore, each such exclusion is not limited to an act of terrorism committed on behalf of a foreign person or interest.

**Name of Insured:** See Evidence

**Policy Number:** See Evidence

**Effective Date:** See Evidence

**Certified Acts Of Terrorism Premium Charge:** See Evidence

**Processing Date:** See Evidence

# IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

**NO COVERAGE IS PROVIDED BY THIS NOTICE.  THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY.  YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY.  PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS.  IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number, 1-866-904-8348, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.



# DECLARATIONS

## St. Paul Fire and Marine Insurance Company

2 JERICHO PLAZA
JERICHO NY 11753

**Item 1.** Named Insured: Community Associations PG and Its Designated Members (LRO)

Address: 30 South Wacker Drive, 22nd Floor
Chicago, IL 60606

**Item 2.** Policy Period: From: See "Evidence of Insurance & Purchasing Group Membership (Hereinafter "Evidence") For the Coverage Period Provided.

**Item 3.** Limits Of Insurance

The Limits Of Insurance, subject to all the terms of this policy, are:

A. See Evidence — Each occurrence

B. See Evidence — General aggregate (in accordance with Section III, Limits Of Insurance)

C. See Evidence — Products-Completed Operations aggregate (in accordance with Section III, Limits Of Insurance)

**Item 4.** Self Insured Retention — $0

**Item 5.** Premium: — $ See Evidence

Surcharge/Surtax:
```
FL - 1.30%   HURRICANE ASSESSMENT SURCHARGE
KY - 1.80%   PLUS ADDITIONAL MUNICIPAL TAX
NJ - 0.90%   PROP & LIABILITY GUARANTY SURCHARGE
WV - 0.55%   SURCHARGE
```

Rate, if applicable: — --

Minimum premium, if applicable: — $

**Item 6.** Agent:
```
MCGOWAN & COMPANY INC.
20595 LORAIN ROAD
FAIRVIEW PARK OH 44126
```

Agency Number: 3401370

**Item 7.** Endorsements attached: See attached schedule.

**Item 8.** Policy Number: See Evidence

_Brian Mac Lean_
President

_Wendy C. Skjerven_
Secretary

© 2003 The Travelers Indemnity Company. All rights reserved.


Here's a list of all forms included in your
policy, on the date shown below.  These
forms are listed in the same order as they
appear in your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Disclosure Notice Terrorism Risk Insurance Act Of  2002 | D0100 | 03-09 |
| Declarations (St. Paul Fire and Marine Insurance Company) | SU089 | 03-03 |
| Policy Form List | 40705 | 05-84 |
| What To Do If You Have A Loss-Specialty Commercial Umbrella Liability Policy | SU106 | 04-10 |
| Cap On Losses From Certified Acts Of Terrorism Endorsement | D0144 | 01-08 |
| Specialty Commercial Umbrella Liability Policy | SU001 | 10-02 |
| Aircraft Exclusion | SU004 | 10-02 |
| Aircraft Products and Grounding Exclusion | SU005 | 10-02 |
| Illinois Amendatory Endorsement | SU133 | 11-03 |
| Illinois Amendment Of Cancellation Notice | SU136 | 12-03 |
| Cross Liability Exclusion | SU023 | 10-02 |
| Designated Premises Limitation | SU028 | 10-02 |
| Employee Benefit Liability Endorsement | SU035 | 06-08 |
| Foreign Liability Exclusion | SU045 | 10-02 |
| Lead Exclusion | SU050 | 10-02 |
| Mold or Other Fungi or Bacteria Exclusion | SU061 | 10-02 |
| Non-Concurrent Aggregate Endorsement | SU064 | 10-02 |
| Occupational Disease Exclusion | SU065 | 10-02 |
| Professional Services Exclusion | SU074 | 10-02 |
| Scheduled Underlying Insurance | SU109 | 08-08 |
| Illinois Punitive Exemplary Or Multiple Damages And Fines OrPenalties Exclusion Endorsement | SU126 | 11-03 |
| Silica Exclusion | SU157 | 08-04 |
| Unsolicited Communication Exclusion Endorsement | SU163 | 10-04 |
| Knowledge Of Occurrence Or Claim | SU203 | 12-05 |
| Application Of Limits Of Insurance | SU221 | 03-06 |
| Auto Liability Limits of Ins. End't. - Exception for Damages Not Subj to Underlying Aggregate Limit Applies Only to Auto | SU244 | 10-06 |
| Claims-Made Coverage And Extended Reporting Period Endorsement - Illinois | SU247 | 06-08 |
| Auto Liability Limitation | SU257 | 03-07 |
| Abuse Or Molestation Exclusion Endorsement - Illinois | SU289 | 09-08 |
| Crisis Management Service Expense Endorsement | SU300 | 12-09 |
| Real Estate Development Exclusion | SUM235 | 12-08 |
| Construction Work Or Completed Work Exclusion | SUM236 | 12-08 |
| Evidence of Insurance & Purchasing Group Membership | LRO-EOI-01 | 01-11 |
| Schedule of Named Insureds - Endorsement | LRO-EOI-02 | 06-07 |
| Schedule of Insured Locations - Endorsement | LRO-EOI-03 | 06-07 |
| Additional Terms & Conditions Endorsement | 40502 | 01-09 |
| Additional Exclusions Endorsement | 40502 | 01-09 |

**Name of Insured**    **Policy Number** See Evidence    **Effective  Date** See Evidence

See Evidence                                    **Processing  Date**

© 1984 The Travelers Indemnity Company. All rights reserved.    Page  1

# What To Do If You Have A Loss - Specialty Commercial Umbrella Liability Policy

When an **Occurrence** happens or is committed that will likely result in damages that are covered by this policy, you or any **Insured** covered under this policy are required to report the claim to:

The Travelers Companies, Inc.
Attn:   Excess Claims
One Tower Square, Mail Code 0000-MS07A
Hartford, CT 06183

All other terms of your policy remain the same.

© 2010 The Travelers Indemnity Company

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement changes any and all property or other first-party protection and any and all liability protection provided by your policy, other than any of the following provided by your policy:

- Coverage that is changed by an exclusion that applies to certified acts of terrorism.
- Commercial auto coverage.
- Commercial crime coverage.
- Coverage that has Professional Liability in the title of that insuring agreement.

## How Coverage Is Changed

There are two changes which are explained below.

1. The following is added to your insuring agreement. This change can limit coverage for losses arising out of certified acts of terrorism if such losses are otherwise covered by your policy.

   If aggregate insured losses attributable to certified acts of terrorism exceed $100 billion in a Program Year (January 1 through December 31), and we have met our insurer deductible under the Terrorism Risk Insurance Act:

   - we won't be responsible for the payment of any portion of the amount of such losses that exceeds $100 billion; and
   - insured losses up to $100 billion will be subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

   *Certified act of terrorism* means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a certified act of terrorism include the following:

   - The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
   - The act is a violent act or an act that is dangerous to human life, property, or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy.

## Other Terms

All other terms of your policy remain the same.

© 2008 The Travelers Companies, Inc.

# Specialty Commercial Umbrella Liability Policy

This is a Commercial Umbrella Liability Policy Form. It specifies the coverage provided, restrictions or exclusions to that coverage, and the rights and duties under this contract.

Throughout this policy the words "you" and "your" refer to the **Named Insured.** The word "**Named Insured**" and all other words or phrases that appear in bold, other than bold used for titles, have or include special meaning as described in this form. The words "we", "us" and "our" refer to the Company indicated in the Declarations as providing this insurance.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you as follows:

## Insuring Agreements

I.     **Coverage**

A.     We will pay on behalf of:

1. the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law; or

2. the **Named Insured** all sums in excess of the **Retained Limit** that the **Named Insured** becomes legally obligated to pay as damages assumed by the **Named Insured** under an **Insured Contract;**

because of:

1. **Bodily Injury** or **Property Damage** that occurs during the **Policy Period** and is caused by an **Occurrence**; or

2. **Personal Injury** or **Advertising Injury** that is caused by an **Occurrence** committed during the **Policy Period;**

if such **Occurrence** takes place anywhere in the world, except for any country or jurisdiction which is subject to any trade sanction, embargo or similar regulation imposed by the United States of America that prohibits the transaction of business with or within such country or jurisdiction.

If we are prevented by law or statute from paying such sums on behalf of any **Insured**, then we will, where permitted by law or statute, indemnify that **Insured** for such sums in excess of the **Retained Limit**. In any event, the amount we will pay for damages is limited as described in Section III. Limits of Insurance.

There is no coverage under this policy for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** unless a **Retained Limit** applies.

B.     **Retained Limit** means the greater of the following:

1. the total of the applicable limits of all **Scheduled Underlying Insurance**, and the applicable limits of any **Other Insurance**, for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by such **Scheduled Underlying Insurance** or **Other Insurance**;

2. the total of the applicable limits of all **Scheduled Retained Limits** for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by such **Scheduled Retained Limits**; or

3. if applicable, the amount stated in the Declarations as a **Self Insured Retention** because of any **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** not covered by either any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit**, and caused by any one **Occurrence**.

---

© Specialty Commercial Underwriters, Inc. All Rights Reserved

**C.** If coverage for the **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** does not exist under any:

    1. **Scheduled Underlying Insurance**; or

    2. **Scheduled Retained Limit**;

because of a specific exclusion or other specific coverage limitation, then paragraph I. Coverage B.3 above does not apply, unless such coverage is specifically provided by endorsement to this policy.

**D.** This insurance applies to **Bodily Injury** and **Property Damage** only if no **Named Insured** knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If a **Named Insured** knew, prior to the **Policy Period**, that the **Bodily Injury** or **Property Damage** had occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the **Policy Period** will be considered to have been known by a **Named Insured** prior to the **Policy Period** if such continuation, change or resumption would otherwise be covered by this policy because of a continuous, multiple or other coverage trigger required under the law that applies.

**Bodily Injury** or **Property Damage** which occurs during the **Policy Period** and was not, prior to the **Policy Period**, known to have occurred by any **Named Insured** includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the **Policy Period** if that would be the result because of a continuous, multiple or other coverage trigger required under the law that applies.

**Bodily Injury** or **Property Damage** will be considered to have been known to have occurred at the earliest time when any **Named Insured**:

    1. reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

    2. receives a written or verbal demand or **Claim** for damages because of the **Bodily Injury** or **Property Damage**; or

    3. becomes aware by any means that the **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

**E.** Solely for the purpose of liability assumed by the **Named Insured** under an **Insured Contract,** reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury,** provided:

    1. liability to such party for such attorney's fees and necessary litigation expense has also been assumed by the **Named Insured** in the same **Insured Contract**; and

    2. such attorney's fees and litigation expenses are for defense of such party against a **Suit** seeking damages covered by this policy.

**F.** If any **Scheduled Underlying Insurance** has a limit of insurance greater than the amount shown in the Schedule of Underlying Insurance, this policy will apply in excess of that greater amount. If any **Scheduled Underlying Insurance** has a limit of insurance, prior to any reduction or exhaustion by payment of one or more **Claims** or **Suits** seeking damages that would be covered under this policy, that is less than the amount shown in the Schedule of Underlying Insurance, this policy will apply in excess of the amount shown in that schedule.

If any **Scheduled Retained Limit** has a limit of insurance greater than the amount shown in the Schedule of Retained Limits, this policy will apply in excess of that greater amount. If any **Scheduled Retained Limit** has a limit of insurance, prior to any reduction or exhaustion by payment of one or more **Claims** or **Suits** seeking damages that would be covered under this policy, that is less than the amount shown in the Schedule of Retained Limits, this policy will apply in excess of the amount shown in that schedule.

**G.** If the total of the applicable limits of any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** are reduced or exhausted by payment of one or more **Claims** or **Suits** seeking damages that would be covered by this policy, we will:

    1. in the event of reduction of the limits of the **Scheduled Underlying Insurance** or the **Scheduled Retained Limit**, pay in excess of such reduced limits; or

    2. in the event of exhaustion of the limits of the **Scheduled Underlying Insurance** or the **Scheduled Retained Limit**, continue in force as underlying insurance upon such exhaustion;

    and subject to any specific exclusions or other specific coverage limitations of that **Scheduled Underlying Insurance** or **Scheduled Retained Limit**.

**H.** The applicable limits of any **Scheduled Underlying Insurance** or **Scheduled Retained Limit** shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment with respect to **Claims** or **Suits** seeking damages which are not covered by this policy.

## II. Defense

**A.** We shall have the right and duty to assume control of the defense of any **Claim** or **Suit** seeking damages covered by this policy, and we shall have the right to investigate and settle such **Claim** or **Suit**, when the **Retained Limit** has been exhausted by payment of judgments or settlements that would be covered by this policy. These rights and duties apply even if the **Claim** or **Suit** is groundless, false or fraudulent.

**B.** Prior to the exhaustion of the **Retained Limit** we shall have the right, but not the duty, to participate in the investigation, settlement or defense of any **Claim** or **Suit** seeking damages that would be covered by this policy. This right includes the opportunity to participate in the defense of any **Claim** or **Suit** that may result in damages covered by this policy. If we exercise this right, we will do so at our own expense.

**C.** We have no duty to defend, investigate or settle any **Claim** or **Suit** seeking damages not covered by this policy.

**D.** We will not defend any **Claim** or **Suit** after the applicable limits of insurance under this policy have been exhausted by payment of judgments or settlements.

**E.** All expenses we incur in the defense of any **Claim** or **Suit** are in addition to the limits of insurance under this policy.

**F.** When we assume the defense of any **Claim** or **Suit** we will pay the following, to the extent that they are not included in the **Scheduled Underlying Insurance**, **Scheduled Retained Limits** or in any **Other Insurance**:

    1. premiums on bonds to release attachments for amounts not exceeding our limits of insurance, but we are not obligated to apply for or furnish any such bond;

    2. premiums on appeal bonds required by law to appeal any **Claim** or **Suit** we defend, but we are not obligated to apply for or furnish any such bond;

    3. all costs taxed against the **Insured** for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**, covered by this policy, in any **Suit** we defend;

    4. pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. But if we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    5. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance under this policy; and

6. the **Insured's** reasonable expenses incurred at our request.

G.    When we have the duty to defend, but are prevented by law or otherwise from performing that duty, the **Insured** shall make or arrange for any necessary investigation or defense. We will reimburse the **Insured** for the reasonable and necessary expenses incurred to provide that investigation or defense, subject to the terms and conditions of this policy.

## III.    Limits Of Insurance

A.    The limits of insurance stated in Item 3 of the Declarations and the rules below establish the most we will pay regardless of the number of:

    1. **Insureds**;

    2. **Claims** made or **Suits** brought;

    3. person or organizations making **Claims** or bringing **Suits**; or

    4. coverages provided under this policy.

B.    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I. Coverage except for:

    1. damages included in the **Products - Completed Operations Hazard**; and

    2. coverages included in the **Scheduled Underlying Insurance** or **Scheduled Retained Limits** to which no underlying aggregate applies.

    If any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** contains aggregate limits, other than an aggregate applying to the **Products-Completed Operations Hazard**, the General Aggregate stated in the Declarations will apply in the same manner as the aggregate limits of each **Scheduled Underlying Insurance** or each **Scheduled Retained Limit**.

C.    The Products - Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products - Completed Operations Hazard**.

D.    Subject to B. and C. above, the Each Occurrence Limit is the most we will pay for all damages covered under Insuring Agreement I. Coverage because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** caused by any one **Occurrence**.

E.    The limits of insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve months, starting with the beginning of the **Policy Period** shown in the Declarations. If, however, the **Policy Period** is extended after issuance for an additional period of less than 12 months, the additional period will be considered part of the last preceding period for purposes of determining the limits of insurance that apply.

## IV.    Definitions

A.    **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition:

    1. notices that are published include material placed on the Internet or similar electronic means of communication;

    2. only that part of your website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an **Advertisement**; and

---

3. the placing of advertising, borders or frames for you or others, or links for or to others, on or in your website is not considered an **Advertisement**.

B.     **Advertising Idea** means a manner or style of **Advertisement** that others use and intend to attract attention in their **Advertisement**. However, information used to identify or record customers or supporters, such as a list of customers or supporters, shall not be considered to be an **Advertising Idea**.

C.     **Advertising Injury** means injury, other than **Bodily Injury** or **Personal Injury,** arising out of your business and caused by one or more of the following offenses:

    1. oral, written or electronic publication of material in your **Advertisement** that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    2. oral, written or electronic publication of material in your **Advertisement** that violates a person's right of privacy;

    3. unauthorized use in your **Advertisement** of another's **Advertising Idea; or**

    4. infringement in your **Advertisement** of another's copyright, trade dress, or **Slogan**.

D.     **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **Auto** does not include **Mobile Equipment.**

E.     **Bodily Injury** means any physical harm, sickness or disease to the physical health of other persons, including death or any of the following resulting at any time from such physical harm, sickness or disease:

    1. mental injury;

    2. mental anguish;

    3. emotional distress;

    4. shock; or

    5. humiliation.

F.     **Claim** means a demand that seeks damages.

G.     **Employee** includes any person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. However, **Employee** does not include any person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

H.     **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

I.     **Impaired Property** means **Tangible Property**, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

    1. it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2. you have, or anyone acting on your behalf has, failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1. the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

    2. you, or anyone acting on your behalf, fulfilling the terms of the contract or agreement.

As used in this definition, **Tangible Property** does not include data.

**J.** **Insured** means each of the following, to the extent set forth:

    1.  the **Named Insured**;

    2.  any person or organization, other than the **Named Insured**, included as an additional insured in any **Scheduled Underlying Insurance** but then for no broader coverage than is provided to such person or organization under such **Scheduled Underlying Insurance**;

    3.  any of your **Employees,** other than:

        a.  your managers if you are a limited liability company; or

        b.  your executive officers if you are an organization other than a partnership, joint venture or limited liability company;

    but only for acts within the scope of their employment by you while performing duties related to the conduct of your business.

    However, no person or organization is an **Insured** under this paragraph IV.J.3. for the ownership, maintenance, operation, use, **Loading or Unloading**, or entrustment to others, of any **Autos**, aircraft or watercraft unless such coverage is included under the **Scheduled Underlying Insurance** and then for no broader coverage than is provided under such **Scheduled Underlying Insurance**.

    4.  any person, other than any of your **Employees**, or organization while acting as your real estate manager;

    5.  any person, organization, trustee or estate to whom you are obligated by a written contract or agreement to provide insurance such as is afforded by this policy but only with respect to liability arising out of:

        a.  **Your Work**; or

        b.  facilities owned or used by you.

    6.  any person (other than any of your partners or co-venturers if you are a partnership or joint venture, any of your members or managers if you are a limited liability company, or any of your executive officers, directors or stockholders if you are an organization other than a partnership, joint venture or limited liability company, or any of your **Employees**) or organization with respect to any **Auto**:

        a.  owned by you, loaned to you or hired by you or on your behalf; and

        b.  used by that person or organization with your permission.

    However, none of the following is an **Insured** under this paragraph IV.J.6.:

        a.  the owner or anyone else from whom you hire or borrow an **Auto**. But this exception does not apply if the **Auto** is a trailer or semi-trailer connected to an **Auto** you own; or

        b.  any person using an **Auto** while working in a business that sells, services, repairs or parks **Autos** unless you are in that business.

**K.** **Insured Contract** means that part of any contract or agreement pertaining to your business under which the **Named Insured** assumes the **Tort Liability** of another party to pay for **Bodily Injury, Property Damage**, **Personal Injury** or **Advertising Injury** to a third person or organization, but only if:

    1.  the **Bodily Injury** or **Property Damage** occurs; or

    2.  the **Personal Injury** or **Advertising Injury** is caused by an **Occurrence** committed;

subsequent to the execution of the **Insured Contract**.

**L.     Loading or Unloading** means the handling of property:

  1.  while it is being moved from the place where it is accepted for transportation;

  2.  while it is being loaded, transported or unloaded; and

  3.  until it is moved to the place where it is finally delivered.

**M.    Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

  1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  2.  vehicles maintained for use solely on or next to premises you own or rent;

  3.  vehicles that travel on crawler treads;

  4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     a.  power cranes, shovels, loaders, diggers or drills; or

     b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

  5.  vehicles not described in paragraphs IV.M.1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     b.  cherry pickers and similar devices used to raise or lower workers; and

  6.  vehicles not described in IV.M.1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

  However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Autos**:

     a.  equipment designed primarily for:

        1)  snow removal;

        2)  road maintenance, but not construction or resurfacing; or

        3)  street cleaning;

     b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**N.     Named Insured** means:

  1.  any person or organization listed in Item 1 of the Declarations, any company that is your subsidiary as of the effective date of this policy and any company in which you own a majority or controlling interest as of the effective date of this policy; and

  2.  any organization, other than a partnership, joint venture or limited liability company, which is newly acquired, controlled or formed by you during the **Policy Period** but only:

     a.  as respects **Occurrences** taking place after you acquire, take control of or form such organization;

      b.   to the extent such organization is included under the coverage provided by any **Scheduled Underlying Insurance**;

      c.   if you give us prompt notice after you acquire, take control of or form such organization; and

      d.   if you own a majority or controlling interest in such organization;

      We may make an additional premium charge for any such organizations you acquire, take control of or form during the **Policy Period**;

3.   if you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner;

4.   if you are a partnership or joint venture, your partners or co-venturers and their spouses, but only with respect to the conduct of your business;

5.   if you are a limited liability company, your members, but only with respect to the conduct of your business, and your managers, but only with respect to their duties as your managers; and

6.   if you are an organization other than a partnership, joint venture or limited liability company, any of your executive officers, directors or stockholders but only while acting within their duties or capacities as such;

However, no person or organization is a **Named Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations.

Also, no person or organization is a **Named Insured** under paragraphs IV.N.3., 4., 5. or 6. for the ownership, maintenance, operation, use, **Loading or Unloading**, or entrustment to others, of any **Autos**, aircraft or watercraft unless such coverage is included under the **Scheduled Underlying Insurance** and then for no broader coverage than is provided under such **Scheduled Underlying Insurance**.

**O.**    **Occurrence** means:

1.   as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property Damage**. All **Bodily Injury** or **Property Damage** caused by such exposure to substantially the same general harmful conditions shall be considered to be caused by one **Occurrence**;

2.   as respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All **Personal Injury** caused by the same or related injurious material, act or offense shall be considered to be caused by one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used or the number of persons or organizations making **Claims** or bringing **Suits**; and

3.   as respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All **Advertising Injury** caused by the same or related injurious material, act or offense shall be considered to be caused by one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used or the number of persons or organizations making **Claims** or bringing **Suits**.

**P.**    **Other Insurance** means any insurance providing coverage for damages covered in whole or in part by this policy. **Other Insurance** includes alternative risk transfer, risk management or financing methods or programs, such as risk retention groups or self-insurance methods or programs. But **Other Insurance** does not include:

1.   any **Scheduled Underlying Insurance**;

2. the **Self-Insured Retention**; or

3. any policy of insurance specifically purchased to be excess of this policy and affording coverage that this policy also affords.

**Q.** **Personal Injury** means injury, other than **Bodily Injury** or **Advertising Injury**, arising out of your business and caused by one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4. oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

5. oral, written or electronic publication of material that violates a person's right of privacy.

**R.** **Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the termination date of this policy.

**S.** **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and **Waste**.

**T.** **Products - Completed Operations Hazard** means all **Bodily Injury** and **Property Damage** occurring away from premises you own, rent or borrow and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned. However, we will consider **Your Work** to be completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when any person or organization, other than another contractor or subcontractor working on the same project, has put that part of the work done at a job site to its intended use.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, shall be considered to be completed.

The **Products - Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the **Bodily Injury** or **Property Damage** arises out of a condition in or on a vehicle created by the **Loading or Unloading** of that vehicle by an **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

**U.** **Property Damage** means:

1. physical injury to **Tangible Property** of others including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of **Tangible Property** of others that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

---

© Copyright, American Insurance Association, 2002. All Rights Reserved. Page 10 of 21

As used in this definition, **Tangible Property** does not include data.

V.  **Scheduled Retained Limits** means the amount and type of insurance, not covered by any **Scheduled Underlying Insurance**, listed in the Schedule of Retained Limits forming a part of this policy.

W.  **Scheduled Underlying Insurance** means:

1.  the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2.  automatically any renewal or replacement of any policy described in paragraph IV.W.1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

X.  **Self-Insured Retention** means the amount indicated in Item 4 of the Declarations which is the maximum amount that:

1.  the **Insured** becomes legally obligated to pay by reason of liability imposed by law; or

2.  the **Named Insured** becomes legally obligated to pay as damages assumed by the **Named Insured** under an **Insured Contract;**

not covered by either any Scheduled Underlying Insurance or any Scheduled Retained Limit and caused by any one Occurrence.

Y.  **Slogan** means a phrase that others use and intend to attract attention in their **Advertisement**. However, a **Slogan** does not include a phrase used as, or in, the name of:

1.  any person or organization, other than you; or

2.  any business or any of the premises, goods, products or services of any person or organization, other than you.

Z.  **Suit** means a civil proceeding that seeks damages. **Suit** includes:

1.  an arbitration proceeding that seeks damages and to which you must submit or do submit with our consent; or

2.  any other alternative dispute resolution proceeding that seeks damages and to which you submit with our consent.

AA.  **Tort Liability** means a liability that would be imposed by law in the absence of any contract or agreement.

BB.  **Waste** includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

CC.  **Your Product** means:

1.  any goods or products, other than real property, that are or were manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**DD.**  **Your Work** means:

1. work or operations performed or being performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work;** and

2. the providing of or failure to provide warning or instructions.

## V.  Exclusions

This insurance does not apply to:

**A.**  **Workers' Compensation, Disability Benefits or Unemployment Compensation Laws**

Any obligation of the **Insured** under any workers compensation law, disability benefits law, unemployment compensation law or any similar law.

**B.**  **ERISA or COBRA**

Any obligation of the **Insured** under:

1. the Employees Retirement Income Security Act Of 1974 (ERISA);

2. the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA); or

3. any similar common or statutory law of any jurisdiction;

including any amendments to such laws.

**C.**  **Uninsured Motorists, Underinsured Motorists or Automobile No-Fault Laws**

Any liability or obligation of the **Insured** under any automobile:

1. uninsured motorists;

2. underinsured motorists; or

3. no-fault or other first party benefits law.

**D.**  **Asbestos**

1. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

   a. absorption, ingestion or inhalation of asbestos in any form by any person; or

   b. existence of asbestos in any form.

© Insurance Services Offices, Inc. All Rights Reserved.

2. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

    a. absorption, ingestion or inhalation of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and **Waste**, in any form by any person; or

    b. existence of any such other irritant or contaminant in any form;

and that is part of any **Claim** or **Suit** that also alleges any **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** described in paragraph V.D.1. of this exclusion, above.

3. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others:

    a. test for, monitor, clean up, remove, contain, treat, detoxify or neutralize asbestos in any form; or

    b. respond to, or assess, in any way the effects of asbestos in any form.

Because asbestos, and any other such irritants or contaminants, are **Pollutants**, this exclusion applies in addition to any of the following exclusions that apply:

    a. the pollution exclusion in this policy; or

    b. any other pollution-related exclusion made part of this policy.

**E.**    **Employment-Related Practices**

**Bodily Injury** or **Personal Injury** to:

1. a person arising out of any:

    a. refusal to employ that person;

    b. termination of that person's employment; or

    c. employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, failure to promote or advance, harassment, humiliation or discrimination applied to or directed at that person; or

2. the spouse, child, parent, brother or sister of that person as a consequence of such **Bodily Injury** or **Personal Injury** to that person described in paragraph V.E.1., of this exclusion, above.

This exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the **Bodily Injury** or **Personal Injury**.

**F.**    **Property Damage to Certain Property**

**Property Damage** to:

1. property you own, rent or occupy;

2. premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of any **Insured;**

5. that particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations if the **Property Damage** arises out of those operations;

6. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it;

7. **Your Product** arising out of **Your Product** or any part of it; or

8. **Your Work** arising out of **Your Work** or any part of it and included in the **Products-Completed Operations Hazard**, unless the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Paragraph V.F.2. of this exclusion, above, does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraph V.F.6. of this exclusion, above, does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

G. **Property Damage to Impaired Property or Property Not Physically Injured**

**Property Damage** to **Impaired Property**, or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. a delay or failure by you, or anyone acting on your behalf, to fulfill the terms of a contract or agreement.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

H. **Product Recall**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. **Your Product**;

2. **Your Work**; or

3. **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. **Expected or Intended Bodily Injury or Property Damage**

**Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**.

This exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

J. **Known Violation of Rights**

**Personal Injury** or **Advertising Injury** caused by or committed at the direction of the **Insured**, or by an offense committed at the direction of the **Insured**, with knowledge that the rights of another would be violated and that **Personal Injury** or **Advertising Injury** would result.

© American Association of Workers' Compensation, All Rights Reserved

**K.      Material Published with Knowledge of Falsity**

**Personal Injury** or **Advertising Injury** arising out of oral, written, or electronic publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity.

**L.      Material Published Prior to Policy Period**

**Personal Injury** or **Advertising Injury** arising out of any:

1.  oral, written, or electronic publication of material whose first publication;

2.  unauthorized use in your **Advertisement** of another's **Advertising Idea** if that unauthorized use first; or

3.  infringement in your **Advertisement** of another's copyright, trade dress or **Slogan** if that infringement first;

took place before the beginning of the **Policy Period**.

**M.      Criminal Acts**

**Personal Injury** or **Advertising Injury** arising out the willful violation of a penal statute or ordinance committed by, at the direction of, any **Insured**.

**N.      Advertising, Broadcasting, Publishing, Telecasting, Media and Internet Businesses**

**Personal Injury** or **Advertising Injury** committed by an **Insured** whose business is:

1.  Advertising, broadcasting, publishing or telecasting;

2.  Designing or determining content of websites for others; or

3.  An Internet search, access, content or service provider.

However, this exclusions does not apply to **Personal Injury** caused by any of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor.

For the purpose of this exclusion, the placing of advertising, borders or frames for an **Insured** or others, or links for or to others, on or in an **Insured's** website is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

**O.      Breach of Contract**

**Personal Injury or Advertising Injury** arising out of breach of contract, other than misappropriation of **Advertising Ideas** under an implied contract.

**P.      Quality or Performance of Goods - Failure to Conforms to Statements**

**Advertising Injury** arising out of the failure of goods, products or services to conform with advertised quality or performance.

**Q.** **Wrong Description of Prices**

**Advertising Injury** arising out of the wrong description of the price of goods, products or services.

**R.** **Intellectual Property**

**Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the actual or alleged infringement or violation of any of the following rights or laws:

  1. copyright;

  2. patent;

  3. trade name;

  4. trade secret;

  5. trademark; or

  6. other intellectual property rights or laws.

This exclusion does not apply to **Bodily Injury** or **Property Damage** that:

  1. results from **Your Products** or **Your Work**; or

  2. is included in the **Products-Completed Operations Hazard**.

This exclusion also does not apply to **Advertising Injury** that results from:

  1. the unauthorized use in your **Advertisement** of another's **Advertising Idea**; or

  2. infringement in your **Advertisement** of another's copyright, trade dress or trademarked **Slogan**.

**S.** **Pollution**

  1. **Bodily Injury, Property Damage or Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world;

  2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, respond to, neutralize or assess the effects of **Pollutants**; or

  3. Any loss, cost or expense arising out of any **Claim** or **Suit** by or for any governmental authority or any other person or organization for damages arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or responding to or assessing in any way, **Pollutants**.

This exclusion does not apply to **Bodily Injury** or **Property Damage**:

  a. arising out of heat, smoke or fumes from a **Hostile Fire**;

  b. arising out of the upset, overturn or collision of an **Auto**; or

  c. included in the **Products-Completed Operations Hazard**;

if insurance for such **Bodily Injury** or **Property Damage** is provided by any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit**. However, the insurance provided by this policy for such **Bodily Injury** or **Property Damage** will not be broader than the insurance provided by such **Scheduled Underlying Insurance** or **Scheduled Retained Limit**.

**T.    Nuclear Material**

**Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of:

1.  the actual, alleged or threatened exposure of any person or property to; or

2.  the **Hazardous Properties** of;

any **Nuclear Material**.

As used in this exclusion:

1.  **hazardous properties** includes radioactive, toxic or explosive properties;

2.  **nuclear material** means source material, special nuclear material or by-product material;

3.  **source material, special nuclear material** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof.

Because **Nuclear Material** is a **Pollutant**, this exclusion applies in addition to any of the following exclusions that apply:

1.  the pollution exclusion in this policy; or

2.  any other pollution-related exclusion made part of this policy.

**VI.    Additional Exclusions**

This insurance does not apply to the following, unless insurance for such liability is provided by any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** and then it will be no broader than the insurance provided by such **Scheduled Underlying Insurance** or **Scheduled Retained Limit**:

**A.    Fellow Employee**

Liability of any **Employee** with respect to **Bodily Injury** or **Personal Injury** to:

1.  another **Employee** of the same employer; or

2.  the spouse or any child, parent, brother or sister of that other **Employee** as a consequence of such **Bodily Injury** or **Personal Injury** to that other **Employee** described in paragraph VI.A.1. of this exclusion.

**B.    Watercraft**

**Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation, **Loading or Unloading**, or entrustment to others of any watercraft owned, operated or rented by, or loaned to, any **Insured.** This exclusion does not apply to watercraft while ashore on premises owned or rented by any **Insured**.

**C.    Aircraft**

**Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use, operation, **Loading or Unloading** or entrustment to others of any aircraft owned, rented or chartered by, or loaned to, any **Insured** or on an **Insured's** behalf, with or without crew.

## VII. Conditions

### A. Appeals

We have the right but not the duty to appeal an award or judgment, including damages covered by this policy, in excess of the applicable **Retained Limit**. If we elect to appeal we will pay, in addition to any applicable limits of insurance of this policy, all costs, interest and expenses incidental to such appeal. However, the result of an appeal will not change the limits of coverage that apply under this policy.

### B. Audit

We may audit the **Insured's** books and records at any time during the term of the **Policy Period** or within three years after expiration or termination of this policy.

### C. Bankruptcy or Insolvency

1. The **Insured's** bankruptcy, insolvency or inability to pay, or the bankruptcy, insolvency or inability to pay of any issuer of **Scheduled Underlying Insurance** will not relieve us of our obligations under this policy.

2. In the event of any such bankruptcy, insolvency or inability to pay:

   a. this insurance will neither replace or reduce the insurance provided by **Scheduled Underlying Insurance** nor replace or reduce any **Scheduled Retained Limit**; and

   b. this insurance will apply only to amounts in excess of the applicable limits of such **Scheduled Underlying Insurance** and **Scheduled Retained Limits**.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver to us advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than 10 days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than 60 days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove such notice.

3. The **Policy Period** will end on the day and time stated in the cancellation notice.

4. If we cancel, final premium shall be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata. It will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any premium refund due you. Our check, or our representative's check, mailed or delivered to you at your mailing address shown in Item 1 of the Declarations, shall be sufficient tender of any such refund due you.

7. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving or receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

© 2013 ISO Properties, Inc., All rights reserved.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**E.     Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver of, or a change in, any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.     Duties in the Event of an Occurrence, Claim or Suit**

1. You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a **Claim** or **Suit** seeking damages covered by this policy. To the extent possible, notice should include:

   a. how, when and where the **Occurrence** took place;

   b. the names and addresses of any injured persons and witnesses; and

   c. the nature and location of any **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the **Occurrence**.

2. If a **Claim** is made or **Suit** is brought against any **Insured** that is reasonably likely to involve the coverage provided by this policy, you must notify us in writing as soon as practicable. You and any other involved **Insured** also must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or **Suit;**

   b. authorize us to obtain necessary records and other information;

   c. cooperate with us in the investigation, settlement or defense of any **Claim** or **Suit** we investigate, settle or defend; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may apply.

3. No **Insured** will, except at that **Insured's** own expense, voluntarily make a payment, assume any obligation, make any admission, or incur any expense, other than for first aid for **Bodily Injury** covered by this policy, without our consent.

**G.     First Named Insured**

The person or organization first named in Item 1 of the Declarations is primarily responsible for the payment of all premiums, the giving and receiving of notice of cancellation and the receiving of any return premiums that become payable under this policy.

**H.     Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give your reports on the conditions that we find. We may also recommend changes. However, we will not undertake to perform the duty of any person or organization to provide for the health or safety of your **Employees** or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with any law, regulation, code or standard.

**I.    Knowledge of Occurrence or Claim**

Knowledge of an **Occurrence, Claim** or **Suit** by your agent, servant or **Employee** shall not in itself constitute knowledge by you, unless a **Named Insured**:

1.  shall have received notice of such **Occurrence, Claim** or **Suit** from said agent, servant or **Employee**; or

2.  otherwise has knowledge of such **Occurrence, Claim** or **Suit**.

**J.    Legal Action Against Us**

No person or organization has a right under this policy to sue us, join us as a party, or otherwise bring us into a **Suit** seeking damages from, or to determine the liability of, any **Insured** unless:

1.  you have, and any other involved **Insured** has, complied with all the terms of this policy; and

2.  the amount you owe has been determined with our consent or by actual trial and final judgment.

**K.    Maintenance of Scheduled Underlying Insurance**

1.  During the **Policy Period,** you agree:

    a.  to keep **Scheduled Underlying Insurance** in full force and effect;

    b.  that the terms, including definitions, conditions and exclusions, of **Scheduled Underlying Insurance** shall not materially change;

    c.  that the total applicable limits of **Scheduled Underlying Insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Claims** or **Suits** for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy; and

    d.  that any renewals or replacements of **Scheduled Underlying Insurance** shall provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

2.  If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

3.  If you are unable to recover from an issuer of any **Scheduled Underlying Insurance** because that issuer is unable to pay or you fail to comply with any term or condition of any **Scheduled Underlying Insurance**, we will only pay those sums covered by this insurance which are in excess of the applicable limit of **Scheduled Underlying Insurance** shown in the **Schedule of Underlying Insurance**.

**L.    Other Insurance**

If **Other Insurance** applies to damages that are also covered by this policy, this policy will apply excess of, and shall not contribute with, that **Other Insurance,** whether it is primary, excess, contingent or on any other basis. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

**M.    Premium**

The premium for this policy is the amount stated in Item 5 of the Declarations. It is a flat premium unless specified as subject to an audit adjustment.

© 2002 The St. Paul Travelers Companies, Inc. All Rights Reserved

**N.    Separation of Insureds**

Except with respect to the limits of insurance of this policy and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.    as if each **Named Insured** were the only **Named Insured;** and

2.    separately to each **Insured** against whom the **Claim** is made or the **Suit** is brought.

**O.    Titles**

The titles of the various sections or paragraphs in this policy and endorsements, if any, attached to this policy are intended solely for convenience or reference and are not to be deemed in any way to affect the provisions to which they relate.

**P.    Transfer of Rights of Recovery to Us**

1.    If any **Insured** has rights to recover from any other person or organization all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair those rights and must help us enforce them.

2.    Any such recovery shall be applied as follows:

    a.    first, any person or organization, including the **Insured,** that has paid an amount in excess of the applicable limits of insurance of this policy will be reimbursed for the actual excess amount paid under this policy;

    b.    then, we will be reimbursed up to the amount we have paid; and

    c.    last, any **Insured** or issuer of **Scheduled Underlying Insurance** is entitled to claim the remainder, up to the amount that **Insured** or issuer of **Scheduled Underlying Insurance** has paid.

3.    Expenses incurred in the exercise of such rights of recovery shall be apportioned among such persons or organizations, including the **Insured,** in the same ratio as their respective recoveries are finally shared.

**Q.    Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**R.    Unintentional Failure to Disclose Hazards**

Your failure to disclose all hazards existing as the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

**S.    When Damages Are Payable**

We will not make any payment under this policy unless and until the **Insured** or any other insurer is obligated to pay the **Retained Limit.**

When the amount of loss has been determined, we will promptly pay on behalf of the **Insured** the amount of loss covered by this policy.

You shall promptly reimburse us for any amount within the **Self-Insured Retention** paid by us on behalf of an **Insured.**

In Witness Whereof we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives where required by law.

© Copyright, Insurance Services Office, Inc., 2001. All rights reserved.
Page 3 of 21

**Aircraft Exclusion**

1. This insurance does not apply to any **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, operation, use, **Loading or Unloading** or entrustment to others of any aircraft owned, rented or chartered by, or loaned to, any **Insured** or on an **Insured's** behalf with or without crew.

2. Section **VI. Additional Exclusions C - Aircraft** of this policy is deleted.

All other terms of your policy remain the same.

# Aircraft Products and Grounding Exclusion

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the **Products- Completed Operations Hazard** relating to:

1. Aircraft, including missiles or spacecraft, and any ground support or control equipment used with such aircraft;

2. Any other goods or products manufactured, sold, handled, or distributed by the **Insured**, or any services provided or recommended by the **Insured** or by others trading under the **Insured's** name, for use in the manufacture, repair, operations or use of any aircraft; or

3. Any articles furnished by the **Insured** or by others trading under the **Insured's** name, and installed in aircraft or used in connection with aircraft, or for spare parts for aircraft, including ground handling tools and equipment, training aids, instructions, manuals, blueprints, engineering or other advice or service relating to aircraft and any labor relating to such aircraft or articles.

It is further agreed that this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the "grounding" of any aircraft.

The following word has or includes special meaning as used in this endorsement and described above:

"Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft by reason of the existence of or alleged or suspected existence of, any defect, fault or condition in such aircraft, or any part thereof sold, handled or distributed by the **Insured** or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders or drawing of the **Insured** or with tools, machinery or other equipment furnished to such person or organizations by the **Insured**, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations. A grounding shall be deemed to commence on the date of an **Occurrence** which discloses such conditions or on the date of an aircraft is first withdrawn from service on account of such condition, whichever occurs first.

All other terms of your policy remain the same.

# Illinois Amendatory Endorsement

This endorsement changes your policy to comply with, or otherwise respond to, Illinois law. Therefore, each change made by this endorsement applies only to the extent:

1.  required by Illinois statutory or regulatory law; or
2.  specifically described in the part of this endorsement which makes that change.

As a result, if the address shown for you in Item 1 of the Declarations of your policy is outside Illinois, each change that is made to comply with Illinois statutory or regulatory law applies only if, and to the extent:

1.  your policy provides coverage for damages that result from your operations in, or which affect, Illinois; and
2.  that law applies to that coverage.

Section **VII. Conditions D. Cancellation 2**. is replaced with the following:

2.  We may cancel this policy:

    (a). If your policy has been in effect 60 days or less, we can cancel for any reason during the policy period. If we do, we will mail a notice of cancellation to you and your agent or broker. The notice will state the reason for cancellation. If we cancel for nonpayment of premium, we'll send notice at least 10 days before coverage will end. If we cancel for any other reason, we will send the notice at least 30 days before coverage will end. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove such notice.

    (b). If your policy has been in effect more than 60 days, we can only cancel for one or more of the following reasons:
    (1). Nonpayment of premium;
    (2). You or your representatives have committed fraud or made a material misrepresentation;
    (3). You violated any of the terms and conditions of the policy;
    (4). The risk originally accepted has measurably increased;
    (5). Loss of reinsurance that provided coverage to us for all or a substantial part of your risk. This loss must be certified to the Director of Insurance.
    (6). Director of Insurance determines that continuing this policy would put us in violation of this state's insurance laws.
    If we cancel for any of these reasons, we will mail a notice to you and your agent or broker. If we cancel because of nonpayment of premium, we must mail to you not less than 10 days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than 60 days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations shall be sufficient to prove such notice.

The following is added to **Section VII. Conditions D. Cancellation**:

We may decide not to renew or continue this policy. If so, we will mail a notice of nonrenewal to you and your agent or broker at least 60 days before the expiration date of this policy. The notice will show the reason for nonrenewal. Even if we do not comply with these terms, this policy will end on the expiration date if:
(a) You don't pay the premium or any installment that's due;
(b) We've agreed to renew this policy; or
(c) You've notified us or your agent or broker that you don't want to renew this policy.

All other terms of your policy remain the same.

© CNA All Rights Reserved. Copyright insurance Services Office, Inc., All rights reserved.

# Illinois Amendment Of Cancellation Notice

Paragraph **2** of Section **VII. Conditions**, **D. Cancellation** is replaced by the following:

We may cancel this policy. If we cancel because of non-payment of premium, we must mail to you not less than 10 days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail to you not less than 60 days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at the last mailing address known to us shall be sufficient to prove such notice.

All other terms of your policy remain the same.

SU136 Ed. 12-03
© Copyright, Universal Underwriters Insurance Companies, 2003. All Rights Reserved.

## Cross Liability Exclusion

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a **Named Insured** caused by any other **Named Insured**.

All other terms of your policy remain the same.

SU023 Ed. 10-02

© 2002, The Hartford Steam Boiler Inspection and Insurance Company, All Rights Reserved

## Designated Premises Limitation

This insurance only applies to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Liability** arising out of:

1. the ownership, maintenance, occupancy or use of the premises designated in the **Schedule of Covered Premises**, below, including any property located on such premises; or
2. any goods or products manufactured, distributed or serviced at or from such premises.

### Schedule of Covered Premises

Description and Location of Premises:

AS PER SCHEDULE ON FILE WITH COMPANY

All other terms of your policy remain the same.

© 2002, The St. Paul Travelers Companies, Inc. All rights reserved.

# Employee Benefits Liability Endorsement

1. The following is added to section **I. Coverage A**:

   We will also pay on behalf of the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of any negligent act, error or omission committed in the **Administration** of your **Employee Benefits Program**. However, the insurance provided by this endorsement will not be broader than the insurance provided by the applicable **Scheduled Underlying Insurance** or the applicable **Scheduled Retained Limit** for such damages.

2. The following are added to section **IV. Definitions**:

   **Administration** means any of the following administrative functions:
   1. Providing information to **Employees**, including dependents and beneficiaries, with respect to eligibility for or scope of an **Employee Benefit Program**;
   2. Handling records in connection with an **Employee Benefit Program**; or
   3. Effecting or terminating any **Employee's** participation in a plan included in the **Employee Benefit Program**.

   **Employee Benefit Program** means any of the following plans:
   1. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an **Employee** may subscribe to such insurance or plans and such plans are generally available to those **Employees** who satisfy the plan's eligibility requirements;
   2. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an **Employee** may subscribe to such plans and such plans are generally available to all **Employees** who are eligible under the plan;
   3. Unemployment insurance, social security benefits, workers compensation and disability benefits;
   4. Vacation plans; or
   5. Any other plan designated in the **Schedule of Designated Plans** below or added by endorsement to this policy.

## Schedule of Designated Plans

ALL OF THE ABOVE

All other terms of your policy remain the same.

## Foreign Liability Exclusion

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that occurs outside of the United States of America, its territories and possessions, Puerto Rico and Canada.

All other terms of your policy remain the same.

© Insurance Services Office, Inc. All rights reserved.

# Lead Exclusion

This Insurance does not apply to:

1.  **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

    a.  absorption, ingestion or inhalation of lead in any form by any person; or
    b.  existence of lead in any form.

2.  **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

    a.  absorption, ingestion or inhalation of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and **Waste**, in any form by any person; or
    b.  existence of any such other irritant or contaminant in any form;

    and that are part of any **Claim** or **Suit** that also alleges any **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** described in paragraph 1. of this exclusion, above.

3.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others:

    a.  test for, monitor, clean up, remove, contain, treat, detoxify or neutralize lead in any form;
    b.  respond to, or assess, in any way the effects of lead in any form.

    Because lead, and any other such irritant or contaminant, are **Pollutants**, this exclusion applies in addition to any of the following exclusions that apply:

    a.  the pollution exclusion in this policy; or
    b.  any other pollution-related exclusion made part of this policy.

All other terms of your policy remain the same.

# Mold or Other Fungi or Bacteria Exclusion

This insurance does not apply to:

**1.** **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

    **a.** absorption, ingestion or inhalation of **Mold or other fungi** or **Bacteria** in any form by any person; or

    **b.** existence of **Mold or other fungi** or **Bacteria** in any form;

Paragraph 1 of this exclusion does not apply to:

    **a.** **Bodily Injury** or **Property Damage** arising out of **Mold or other fungi** or **Bacteria** which are in, on or part of any good or product that is intended to be consumed as food, beverage or medicine;

    **b.** **Bodily Injury** arising out of **bacteria** which are directly transmitted solely by or from another person to the person sustaining the **Bodily Injury**, or

    **c.** **Bodily Injury** arising out of a bacterial infection which develops in connection with physical harm to the person sustaining the **Bodily Injury**, if such physical harm is not excluded by this paragraph of this exclusion, or by any other part of this exclusion, and a **Claim** or **Suit** is made or brought against the **Insured** because of such physical harm;

**2.** **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the actual, alleged or threatened:

    1. absorption, ingestion or inhalation of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and **Waste**, in any form by any person; or

    2. existence of any such other irritant or contaminant in any form;

and that is part of any **Claim** or **Suit** that also alleges any **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** described in paragraph 1. of this exclusion, above; or

**3.** Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others:

    **a.** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Mold or other fungi** or **Bacteria** in any form; or

    **b.** respond to, or assess in any way, the effects of **Mold or other fungi** or **Bacteria** in any form.

Because **Mold or other fungi** or **Bacteria** can be **Pollutants,** and such other irritants or contaminants are **Pollutants,** this exclusion applies in addition to any of the following exclusions that apply:

    **a.** the pollution exclusion in this policy; or

    **b.** any other pollution-related exclusion made part of this policy.

For purposes of this endorsement only, the following words or phrases have or include special meaning:

**1.** **Molds or other fungi** means:
    **a.** any type or form of mold or mildew;
    **b.** any other type or form of fungus; or
    **c.** any mycotoxin, spore, scent or byproduct that is produced or released by such mold, mildew or other fungus.

© Insurance Services Office, Inc., All rights reserved.

2. **Bacteria** means:
    **a.** any type or form of bacterium; or
    **b.** any mycotoxin, spore, scent or byproduct that is produced or released by such bacterium.

All other terms of your policy remain the same.

## Non-Concurrent Aggregate Endorsement

If any **Scheduled Underlying Insurance** or any **Other Insurance** providing coverage to the Insured has:

1) an aggregate limit of liability; and
2) a policy term which differs from the **Policy Period** of this policy;

then for the purpose of determining when this policy applies, any such aggregate shall not be reduced or exhausted by any payment with respect to any **Bodily Injury** or **Property Damage** that occurs, or any **Personal Injury** or **Advertising Injury** caused by an **Occurrence** committed, prior or subsequent to the **Policy Period** of this policy.

All other terms of your policy remain the same.

# Occupational Disease Exclusion

This insurance does not apply to **Bodily Injury** to any **Employee** of the **Insured** arising out of any disease which is caused or aggravated by the conditions of that **Employee's** employment by you.

This insurance also does not apply to **Bodily Injury** or **Personal Injury** to the spouse, child, parent, brother or sister of that **Employee** as a consequence of such **Bodily Injury** described in the paragraph above.

This exclusion applies:

1. whether the **Insured** may be liable as employer or in any other capacity; and
2. to any obligation to share damages with or repay someone else who must pay damages because of such **Bodily Injury** or **Personal Injury**.

All other terms of your policy remain the same.

© copyright, St. Paul Fire and Marine Insurance Company, 2002 All Rights Reserved

## Professional Services Exclusion

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of the **Insured**.

All other terms of your policy remain the same.

©Copyright, Truckers Insurance Companies, 2002. All rights reserved.

# Scheduled Underlying Insurance

## Comprehensive General Liability

Carrier
Per Schedule On File (If Applicable)

Policy Number
Per Schedule on File (If Applicable)

Policy Period  Per Schedule on file (If Applicable)

Coverage is:            ☐ claims-made
                        ☒ not claims-made

## Limits Of Liability

| | |
|---|---|
| General Aggregate. | $2,000,000 (At Least) |
| Products/Completed Operations Aggregate. | $1,000,000 (At Least) |
| Personal and Advertising Injury. | $1,000,000 (At Least) |
| Each Occurrence. | $1,000,000 (At Least) |

## Automobile Liability

Carrier
Per Schedule On File (If Applicable)

Policy Number
Per Schedule on File (If Applicable)

Policy Period  Per Schedule on file (If Applicable)

## Limits Of Liability

Bodily Injury And Property Damage Combined.
Each Accident
$1,000,000 CSL  (At Least)

Bodily Injury.
Each Person                    Each Accident
$                              $

Property Damage.
Each Accident
$

## Employers Liability

Carrier
Per Schedule On File (If Applicable)

Policy Number
Per Schedule on File (If Applicable)

Policy Period  Per Schedule on file (If Applicable)

## Limits Of Liability

Bodily Injury By Accident
Each Accident
$100,000 (At Least)

Bodily Injury Disease
Policy Limit                   Each Employee
$500,000 (At Least)            $100,000 (At Least)

---

**Name of Insured**        **Policy Number** See Evidence        **Effective Date** See Evidence
See Evidence                                                      **Processing Date**

# Scheduled Underlying Insurance

## Comprehensive General Liability

Carrier

Policy Number

Policy Period

Coverage is:
- ☐ claims-made
- ☐ not claims-made

### Limits Of Liability

| | |
|---|---|
| General Aggregate. | $ |
| Products/Completed Operations Aggregate. | $ |
| Personal and Advertising Injury. | $ |
| Each Occurrence. | $ |

## Automobile Liability

Carrier

Policy Number

Policy Period

### Limits Of Liability

Bodily Injury And Property Damage Combined.
Each Accident
$

| Bodily Injury. | |
|---|---|
| Each Person | Each Accident |
| $ | $ |

Property Damage.
Each Accident
$

## Employers Liability

Carrier

Policy Number

Policy Period

### Limits Of Liability

Bodily Injury By Accident
Each Accident
$

| Bodily Injury By Disease | |
|---|---|
| Policy Limit | Each Employee |
| $ | $ |

Page 2 © 2008 The Travelers Indemnity Company. All rights reserved.

# Illinois Punitive Exemplary Or Multiple Damages And Fines Or Penalties Exclusion

This insurance does not apply to any punitive, multiple, treble or exemplary damages, or any fines or penalties.

However, if a **Claim** or **Suit** is brought against you for covered **Bodily injury, Property Damage, Personal Injury** or **Advertising Injury** and the suit is seeking both compensatory and punitive, multiple, treble or exemplary damages, we will have a duty to defend such **Claim** or **Suit**, subject to Section II. Defense, without liability for such punitive, multiple, treble or exemplary damages.

All other terms of your policy remain the same.

©Case 3:17-cv-00433-TAV-HBG Document 73-1 Filed 04/03/19 Page 69 of 95 PageID #: 591

# Silica Exclusion

This insurance does not apply to:

1. **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any actual, alleged or threatened:

   a. absorption, ingestion or inhalation of silica in any form by any person; or

   b. existence of silica in any form.

2. **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any actual, alleged or threatened:

   a. absorption, ingestion, or inhalation of any other solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and **Waste**, in any form by any person; or

   b. existence of any such other irritant or contaminant in any form;

   and that are part of any **Claim** or **Suit** that also alleges any **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** described in paragraph 1 of this exclusion above.

3. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any **Insured** or others:

   a. test for, monitor, clean up, remove, contain, treat, detoxify or neutralize silica in any form; or

   b. respond to, or assess, in any way the effects of silica in any form.

Because silica, and any other such irritants or contaminants, are **Pollutants**, this exclusion applies in addition to any of the following exclusions that apply:

   a. the pollution exclusion in this policy; or

   b. any other pollution-related exclusion made part of this policy.

All other terms of your policy remain the same.

# Unsolicited Communication Exclusion Endorsement

1. The following is added to section **V. Exclusions**:

   **Unsolicited Communication**

   This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury**:

   1. arising out of the actual or alleged violation of any law or regulation that restricts or prohibits the transmitting of **Unsolicited Communication**; or

   2. alleged in a **Claim** or **Suit** that also alleges a violation of any law or regulation that restricts or prohibits the transmitting of **Unsolicited Communication**.

2. The following is added to section **IV. Definitions**:

   **Unsolicited Communication** means any communication, in any form, that:

   1. is received by any person or organization; and

   2. such person or organization did not ask to receive.

All other terms of your policy remain the same.

© 2004, The Hartford, (includes copyrighted materials of Insurance Services Office, Inc., with its permission.) All rights reserved

# Knowledge Of Occurrence or Claim

The following replaces section VII. Conditions I. Knowledge Of Occurrence or Claim

Knowledge of Occurrence or Claim

Knowledge of an **Occurrence**, **Claim** or **Suit** by your agent, servant or **Employee** shall not in itself constitute knowledge by you, unless your Corporate Risk Manager or anyone working in the capacity as your Corporate Risk Manager:

1. shall have received notice of such **Occurrence**, **Claim** or **Suit** from said agent, servant or **Employee**; or
2. otherwise has knowledge of such **Occurrence**, **Claim** or **Suit**.

All other terms of your policy remain the same.

© 2005 The Travelers Companies, Inc. All Rights Reserved.

# Application of Limits of Insurance

1. The following replaces the Section **III. Limits Of Insurance B.** of this policy:

   B. The General Aggregate Limit is the most we will pay for all damages covered under **Insuring Agreement I. Coverage** except for:

   1. damages included in the **Products-Completed Operations Hazard;** and
   2. damages that would have been covered under any Automobile Liability type of coverage included in the **Scheduled Underlying Insurance** or **Scheduled Retained Limits** to which no aggregate limit applies, but aren't only because its applicable limit of liability is exhausted.

   For damages because of **Bodily Injury** or **Property Damage**, if any one **Scheduled Underlying Insurance** or any one **Scheduled Retained Limit** contains aggregate limits in the same policy that apply separately to each **Location** or **Project**, other than an aggregate limit applying to the **Products-Completed Operations Hazard**, then the General Aggregate Limit stated in the Declarations will apply in the same manner as such aggregate limits of that **Scheduled Underlying Insurance** or **Scheduled Retained Limit**.

   However, with respect to COMMUNITY ASSOCIATIONS PROGRAM INC and to each separate Certificate issued to members of COMMUNITY ASSOCIATIONS PROGRAM INC we will not pay more than TWO times the General Aggregate Limit stated in Item 3 of the Declarations for the combined total of all damages covered under **Insuring Agreement I. Coverage** because of **Bodily Injury** and **Property Damage** that arises out of any **Location** or **Project**. For the purposes of determining the applicable General Aggregate Limit, each **Location** or **Project** that includes premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, or waterway, or by a right-of-way of a railroad, will be considered a single **Location** or **Project**.

2. The following is added to section **III. Limits of Insurance:**

   With respect to each separately numbered Certificate issued to members of COMMUNITY ASSOCIATIONS PROGRAM INC , endorsed to this policy, and evidenced by monthly Bordeaux to us, the General Aggregate Limit will apply jointly to all **Named Insureds** shown on such Certificate.

3. The following is added to Section **IV. Definitions** of this policy:

   **Location** means any premises, site or location that you rent or lease from others, or own.

   **Project** means any area away from any premises, site, or location that you rent or lease from others, or own, and at which you are performing operations pursuant to a contract or agreement.

4. The following is added to section **IV. Definitions R. Policy Period:**

   For purposes of the beginning and ending date of coverage under this insurance for each **Named Insured**, **Policy Period** shall mean the period of time from the inception date shown on the applicable Certificate to the earlier of the expiration date shown on such Certificate or the termination date of this policy.

All other terms of your policy remain the same.

## Auto Liability Limits of Insurance Endorsement -
## Exception for Damages Not Subject to Underlying Aggregate Limit
## Applies Only to Auto Liability

The following replaces the first paragraph of Section **III. Limits Of Insurance B.** of this policy:

B.  The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I. Coverage except for:

   1.  damages included in the **Products-Completed Operations Hazard**; and

   2.  damages that would have been covered under any Automobile Liability type of coverage included in the **Scheduled Underlying Insurance** or **Scheduled Retained Limits** to which no aggregate limit applies.

All other terms of your policy remain the same.

SU244 Ed. 10-06
© 2006 Catlin Underwriting Agencies, Inc. All rights reserved.

# Claims-Made Coverage and Extended Reporting Period Endorsement - Illinois

**A.** With respect to the coverage provided by this policy that applies in excess of the **Scheduled Underlying Insurance** listed directly below, which provides coverage on a claims-made basis, this policy also provides coverage on a claims-made basis:

**Scheduled Underlying Insurance** Description: EMPLOYEE BENEFITS LIABILITY

**Scheduled Underlying Insurance** Carrier: VARIOUS - AS PER SCHEDULE ON FILE WITH COMPANY

**Scheduled Underlying Insurance** Policy #: VARIOUS - AS PER SCHEDULE ON FILE WITH COMPANY

**Scheduled Underlying Insurance** Limits: $1,000,000 EACH CLAIM/$1,000,000 AGGREGATE

**Scheduled Underlying Insurance** Retroactive Date:


**Scheduled Underlying Insurance** Description:

**Scheduled Underlying Insurance** Carrier:

**Scheduled Underlying Insurance** Policy #:

**Scheduled Underlying Insurance** Limits:

**Scheduled Underlying Insurance** Retroactive Date:


**Scheduled Underlying Insurance** Description:

**Scheduled Underlying Insurance** Carrier:

**Scheduled Underlying Insurance** Policy #:

**Scheduled Underlying Insurance** Limits:

**Scheduled Underlying Insurance** Retroactive Date:


**B.** Each of the following applies to such coverage provided by this policy on a claims-made basis:

1. The **Bodily Injury** or **Property Damage** must have occurred, the **Personal Injury** or **Advertising Injury** must have been caused by an **Occurrence** committed, or the negligent act, error, or omission must have been committed, on or after the **Retroactive Date** of this policy.

2. The **Bodily Injury** or **Property Damage** must have occurred, the **Personal Injury** or **Advertising Injury** must have been caused by an **Occurrence** committed, or the negligent act, error or omission must have

© Insurance Company of the State of Pennsylvania. All rights reserved.

Page 3 of 3

been committed, on or before the earlier of the expiration date shown in Item 2 of the Declarations or the termination date of this policy.

3. The **Claim** or **Suit** for any **Bodily Injury**, **Property Damage**, **Personal Injury**, **Advertising Injury** or negligent act, error, or omission must have been first made or brought during the **Policy Period** or within 60 days thereafter, or within any **Extended Reporting Period** provided under this policy. A **Claim** or **Suit** is deemed first made or brought when notice of such **Claim** or **Suit** is first received by any **Insured** or by us, whichever is earlier.

4. No insurance is provided by this policy for any **Claim** or **Suit**, or any notification being treated as a **Claim** or **Suit**, which is made or brought before the inception date shown in Item 2 of the Declarations and for which any **Insured** has given notice to any person or organization providing **Other Insurance**.

**C.** The following is added to section **VII. Conditions F. Duties in the Event of an Occurrence, Claim** or **Suit** but only with respect to this endorsement:

4. Notice of an **Occurrence** as described in F.1. above is not notice of a **Claim** or **Suit**. However, if:

  a. we are notified during the **Policy Period**, as specified above, of an **Occurrence**; and
  b. a **Claim** or **Suit** is made or brought within 36 months from the date we are notified of that **Occurrence**;

  then this policy will apply as if notice of that **Claim** or **Suit** has been made during the **Policy Period**.

**D.** The following is added to **VII. Conditions**:

**Extended Reporting Period**

1. If this policy is cancelled or nonrenewed for any reason, we will provide an **Automatic Extended Reporting Period** which extends the time to make or bring a **Claim** or **Suit**. The **Automatic Extended Reporting Period** begins at the end of the **Policy Period** and ends after five (5) years. Any **Claim** or **Suit** made or brought during the **Automatic Extended Reporting Period** shall be deemed to have been made during the **Policy Period** immediately preceding the **Automatic Extended Reporting Period**. The Limits of Liability will not be reinstated for the **Automatic Extended Reporting Period**.

2. An **Additional Extended Reporting Period** will apply instead of the **Automatic Extended Reporting Period**, but only if:
  a. The **Insured** requests it in writing within 60 days after the end of the **Policy Period**;
  b. The **Insured** has paid all premiums due for this policy at the time the **Insured** makes such request; and
  c. The **Insured** pays the additional premium for such **Additional Extended Reporting Period** as charged by us. The additional premium will not exceed 200% of the annual expiring premium.

3. Once the **Additional Extended Reporting Period** is effective, neither we nor you may cancel the **Additional Extended Reporting Period**, and we shall not refund any part of the premium paid for the **Additional Extended Reporting Period** for any reason.

4. Any **Claim** or **Suit** first made or brought during the **Additional Extended Reporting Period** will be deemed to have been made or brought on the last day of the **Automatic Extended Reporting Period**. The **Additional Extended Reporting Period** will not extend the **Policy Period**. The Limits of Liability of this policy will be reinstated but only for **Claims** or **Suits** made or brought during the **Additional Extended Reporting Period**.

5. Any insurance provided by this policy for **Claims** or **Suits** made or brought during the **Additional Extended Reporting Period** is excess over any **Other Insurance** providing coverage for such **Claims** or **Suits** after the **Additional Extended Reporting Period** begins.

Page 3 of 3 The StarNet Indemnity Company all rights reserved.

**E.** With respect to this endorsement only, the following are added to section **IV. Definitions** :

**Additional Extended Reporting Period** means a period of `5YRS OR THE LENGTH OF THE ADDTL EXTENDED REPORTING PERIOD IN YOUR SCHEDULED UNDERLYING INSURANCE, WHICHEVER IS LESS.` starting with the expiration date of this policy, during which **Claims** or **Suits** may be first made or brought.

**Automatic Extended Reporting Period** means a period of five (5) years, starting with the expiration date of this policy, during which **Claims** or **Suits** may be first made or brought.

**Retroactive Date** means                . If no retroactive date is shown, then the retroactive date of this policy is the same as the retroactive date shown on the applicable **Scheduled Underlying Insurance** listed in part A. of this endorsement.

All other terms of your policy remain the same.

# Auto Liability Limitation

The following is added to section **V. Exclusions**:

**Auto**

This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, operation, use, **Loading or Unloading** or entrustment to others of any **Auto**.

However, if insurance for such **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** is provided by any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit**, then:
1. this exclusion shall not apply; and
2. the insurance provided by this policy will not be broader than the insurance provided by that **Scheduled Underlying Insurance** or that **Scheduled Retained Limit**.

All other terms of your policy remain the same.

© Insurance Services Offices, Inc. All rights reserved

## Abuse Or Molestation Exclusion Endorsement - Illinois

1. The following is added to section **V. Exclusions**:

**Abuse or Molestation**

**Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of any act of **Abuse or Molestation**.

However, this exclusion does not apply to the **Insured's** vicarious liability for such **Bodily Injury** or **Personal Injury** if insurance for such **Bodily Injury** or **Personal Injury** is provided by any Scheduled Underlying Insurance or **Scheduled Retained Limit** and then the insurance provided by this policy will not provide broader coverage than the insurance provided by that **Scheduled Underlying Insurance** or **Scheduled Retained Limit**.

2. The following are added to section **IV. Definitions**:

**Abuse or Molestation** means any illegal or offensive physical act or contact committed by any **Perpetrator** against any person who is:
- under 18 years of age;
- legally incompetent; or
- in the care, custody or control of any **Insured** and is physically or mentally incapable of consenting to such physical act or contact.

**Perpetrator** means any of the following persons who actually or allegedly commit any illegal or offensive physical act or contact:
- you or your spouse, if you are an individual;
- your partners or members, or their spouses, if you are a partnership or joint venture;
- your managers or members, if you are a limited liability company;
- your executive officers or directors, if you are an organization other than a partnership, joint venture or limited liability company;
- your **Employees** or volunteer workers; or
- any other person acting together with any of the persons described in paragraphs 1. through 6. above.

All other terms of your policy remain the same.

# Crisis Management Service Expenses Endorsement

1. The following is added to section **I. Coverage**:

   **Crisis Management Service Expenses**

   We will reimburse you, or pay on your behalf, **Crisis Management Service Expenses** arising out of a **Crisis Management Event** that first commences during the **Policy Period**. The most we will pay for all **Crisis Management Service Expenses** for all **Crisis Management Events** that first commence during the **Policy Period** is the Crisis Management Service Expenses Limit. The Crisis Management Service Expenses Limit is 1% of the General aggregate limit stated in Item **3.B.** of the Declarations. A **Crisis Management Event** will be deemed to first commence at the time when any **Executive Officer** first becomes aware of an **Occurrence** that leads to a **Crisis Management Event** and will end when we determine that the crisis no longer exists, or when the Crisis Management Service Expenses Limit has been exhausted, whichever occurs first.

   A **Retained Limit** does not apply to **Crisis Management Service Expenses**.

   Any payment of **Crisis Management Service Expenses** that we make under this endorsement shall not be determinative of our obligations under this policy with respect to, nor create any duty to defend against or indemnify any **Insured** for, any **Claim** or **Suit**.

2. The following is added to section **III. Limits of Insurance**:

   The most we will pay for **Crisis Management Service Expenses** arising out of all **Crisis Management Events** is the Crisis Management Service Expenses limit as stated in paragraph 1. above. Payment of any such **Crisis Management Service Expenses** is in addition to, and shall not reduce, any aggregate limits under this policy.

3. The following is added to section **IV. Definitions**:

   **Crisis Management Event** means an **Occurrence** that an **Executive Officer** of the **Named Insured** reasonably determines has resulted, or may result, in:
   1. damages covered by this policy that are in excess of the total applicable limits of the **Scheduled Underlying Insurance** or **Scheduled Retained Limit**; and
   2. significant adverse regional or national media coverage.

   **Crisis Management Service Expenses** means the reasonable and necessary expenses you incur in:
   1. retaining a public relations consultant or firm, or a crisis management consultant or firm; or
   2. planning or executing your public relations campaign;
   to mitigate the negative publicity generated from a **Crisis Management Event**.

   **Executive Officer** means the:
   1. Chief Executive Officer;
   2. Chief Operating Officer;
   3. Chief Financial Officer;
   4. President;
   5. General Counsel;
   6. general partner (if the **Named Insured** is a partnership); or
   7. sole proprietor (if the **Named Insured** is a sole proprietorship);
   of the **Named Insured**, or any person acting in the same capacity as any individual listed above.

© 2009 The Travelers Indemnity Company

Page 1 of 2

4. The following is added to section **V. Exclusions**:

**Newly Acquired, Controlled or Formed Entities**

**Crisis Management Service Expenses** arising out of a **Crisis Management Event** that occurred prior to the date you acquired, controlled or formed any other entity, even though an **Executive Officer** only first becomes aware of an **Occurrence** that leads to such **Crisis Management Event** after such date.

5. The following is added to section **VII. Conditions F. Duties in the Event of an Occurrence, Claim or Suit**:

You must also see to it that we are notified by telephone within 24 hours of a **Crisis Management Event** that may result in **Crisis Management Service Expenses**.

You must also provide written notice as soon as practicable. To the extent possible, notice should include:
a. how, when and where the **Crisis Management Event** took place;
b. the names and addresses of any injured persons and witnesses;
c. the nature and location of any **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the **Crisis Management Event**; and
d. the reason it is likely to involve damages covered by this policy in excess of the **Retained Limit** and involve regional or national media coverage.

You must submit all incurred expenses within 180 days after we have notified you of our determination that the **Crisis Management Event** no longer exists. Expenses submitted after 180 days of such notice are not reimbursable.

All other terms of your policy remain the same.

603
© 2009 The Travelers Indemnity Company

# Real Estate Development Exclusion

1. The following is added to section **V. Exclusions**:

   **Real Estate Development Activities**

   This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of any **Real Estate Development Activities** by or on behalf of any **Insured**.

   This exclusion does not apply to the repair, maintenance, renovation, alteration, or addition to an existing building owned by the **Named Insured**.

2. The following is added to section **IV. Definitions**:

   **Real Estate Development Activities** includes the design, site preparation, construction, marketing, or sale of real property.


All other terms of your policy remain the same.

SEY435-J-1-1605
© 2008 The Travelers Companies, Inc.

Page 1 of 1

# Construction Work Or Completed Work Exclusion

1. The following is added to section **V. Exclusions**:

   **Construction work or completed work**

   This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury**, or **Advertising Injury** arising out of any **Construction Work or Completed Work**.

   This exclusion does not apply to the repair, maintenance, renovation, alteration, or addition to an existing building owned by the **Named Insured**.

2. The following words or phrases have or include special meaning as used in this endorsement and described below.

   **Construction Work or Completed Work** means the development, construction, reconstruction, or total renovation of any part of real property.

All other terms of your policy remain the same.

© 2008 The Travelers Companies, Inc.

Page 1 of 1



This endorsement changes your policy.

<u>How Coverage is Changed</u>

There are multiple changes that are explained below. Section **III. Limits of Insurance, B. 2.** is hereby deleted.

Section **IV. Definitions, N. 1.** is hereby deleted and replaced with the following:

    N.  **Named Insured** means:
        1.  Any person or Organization listed in the "Named Insured" section of the "Evidence of Insurance & Purchasing Group Membership" or in the "Schedule of Named Insureds – Endorsement."

Section **IV. Definitions, N. 2.** is hereby deleted.

Section **VII. Conditions, D. Cancellation** is amended to add the following:

    **Flat Cancellations**

        Flat cancellations are not permitted.

    **Earliest Date Policy Can Be Cancelled, If Cancelled By You**

        The date that an ACORD Lost Policy Release is received at the following address is the earliest date that this policy may be cancelled:

            McGowan & Company, Inc. – Home Office
            Old Forge Centre
            20595 Lorain Road
            Fairview Park, OH 44126
            Fax: (440) 333-3214

    **Lost Policy Release Required to Cancel**

        This policy may only be cancelled by having your insurance broker send or fax an ACORD Lost Policy Release, signed by you, as **Insured**, and signed by that insurance broker, to the following address or facsimile number:

            McGowan & Company, Inc. – Home Office
            Old Forge Centre
            20595 Lorain Road
            Fairview Park, OH 44126
            Fax: (440) 333-3214

Section **VII. Conditions** is amended to add the following:

    **Minimum Earned Premium**

        The minimum earned premium shall be $1,000.00.

    **Reinstatement**

        We are under no obligation to reinstate this policy once this policy has been cancelled for non-payment.



**Automatic Non-Renewal**

This policy is automatically non-renewed on its expiration date. As of this policy's expiration date, we may or may not offer you a renewal. If we offer you a renewal, we may offer you a renewal with terms and conditions that are different from those of this policy. Further, if we offer you a renewal, the premium may increase more than 25% as compared to this policy's price.

**Underlying General Liability & Liquor Liability Policies Must Be Written With "Each Occurrence" and "General Aggregate" Limits That Apply On a "Per Location" Basis**

All underlying General Liability and Liquor Liability policies must be written so that their "Each Occurrence" and "General Aggregate" limits apply on a "per location" basis. If they do not, the terms, conditions, exclusions, and limits of this Umbrella policy shall apply as if each underlying General Liability and Liquor Liability policy had been written so that its "Each Occurrence" and "General Aggregate" limits applied on a "per location" basis.

**Other Terms**

This endorsement supersedes any term or condition of the policy granting coverage to the contrary, but may be superseded by the "Evidence of Insurance & Purchasing Group Membership."

All other terms of your policy remain the same.



This endorsement changes your policy.

<u>How Coverage is Changed</u>

There are multiple changes that are explained below.

It is agreed that section **V. Exclusions** is amended to add the following exclusions:

This insurance shall not apply to:

### Discrimination

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with discrimination based on race, religion, nationality, national origin, color, creed, sex, sexual preference, marital status, physical disability, or impairment.

### Pool Slides & Diving Boards

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with the use, ownership, maintenance, or operation of pool slides or diving boards.

### Marinas & Marina Facilities

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with the use, ownership, maintenance, or operation of marinas, including, but not limited to, gas docks and boat repair facilities.

### Vacant Buildings

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with the use, ownership, maintenance, or operation of vacant buildings.

### Sexual or Physical Abuse or Molestation

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with sexual or physical abuse or molestation.

### Day Care Facilities or Preschools

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with the use, ownership, maintenance, or operation of day care facilities or preschools.

### Water Skiing or Water Skiing Facilities

**Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury**, or any other liability, damage, loss, cost, **Claim**, **Suit**, or expense arising from or in connection with waterskiing or the use, ownership, maintenance, or operation of water skiing facilities.



**Personal Liability**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the Personal Liability (as opposed to Commercial Liability) of the Insured, meaning any liability, damage, loss, cost, Claim, Suit, or expense that is covered by a Personal Automobile Liability policy, a Homeowners Liability policy, a Condominium Owners Liability policy, a Tenants Liability policy, a Personal Watercraft Policy, or a Personal Excess Liability or Umbrella policy.

**Electrical Wiring or Conduit Leading to Boat Docks or Boat Slips & the Discharge of Electricity**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the discharge of electricity by electrical wiring or conduit leading to boat docks or boat slips.

**Dispensation & Storage of Petroleum for Vehicles**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the dispensation or storage, whether above-ground or underground, of petroleum-based products used to fuel motor vehicles, automobiles, watercraft, or aircraft.

**Firearms**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the discharge of firearms by an employee, agent, or representative of the Insured while acting within the scope of his or her duties, or the Insured, or a security guard employed by the Insured, or a security guard employed by a third party contractor hired by the Insured.

**Watercraft**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the use, ownership, maintenance, or operation of watercraft, including, but not limited to jet skis, water bikes, and Ski-Doos©.

**Parasailing & Hang-Gliding**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with parasailing and hang-gliding.

**Snowmobiles & All-Terrain Vehicles**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with the use, ownership, maintenance, or operation of snowmobiles and all-terrain vehicles. This exclusion does not apply to golf carts.

**Automobile Racing & Automobiles Used for Racing Purposes**

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury, or any other liability, damage, loss, cost, Claim, Suit, or expense arising from or in connection with automobile racing or the use, ownership, maintenance, or operation of automobiles used for racing purposes.

**Other Terms**

This endorsement supersedes any term or condition of the policy granting coverage to the contrary, but may be superseded by the "Evidence of Insurance & Purchasing Group Membership."

All other terms of your policy remain the same.

# EXHIBIT 5 TO SUGGS DECLARATION

*File Number*      6348-402-4



# To all to whom these Presents Shall Come, Greeting:

*I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that I am the keeper of the records of the Department of Business Services. I certify that*

COMMUNITY ASSOCIATIONS PG, INC., A DOMESTIC CORPORATION, INCORPORATED UNDER THE LAWS OF THIS STATE ON APRIL 01, 2004, APPEARS TO HAVE COMPLIED WITH ALL THE PROVISIONS OF THE GENERAL NOT FOR PROFIT CORPORATION ACT OF THIS STATE, AND AS OF THIS DATE, IS IN GOOD STANDING AS A DOMESTIC CORPORATION IN THE STATE OF ILLINOIS.



*In Testimony Whereof, I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, this*   3RD *day of*   APRIL   *A.D.*   2019   .

*Jesse White*

SECRETARY OF STATE

Authentication #: 1909301164 verifiable until 04/03/2020
Authenticate at: http://www.cyberdriveillinois.com

# EXHIBIT 6 TO SUGGS DECLARATION

# BLACK MCLAREN JONES RYLAND & GRIFFEE

A PROFESSIONAL CORPORATION
530 OAK COURT DRIVE, SUITE 360
MEMPHIS, TENNESSEE 38117
TELEPHONE 901-762-0535
TELECOPIER 901-762-0539

AMY WORRELL STERLING:
ASTERLING@BLACKMCLAW.COM

FIRM WEBSITE:
WWW.BMJRGLAW.COM

March 4, 2019

<u>VIA EMAIL</u>
[gilknox@sidgilreath.com]

Sidney Gilreath, Esq.
GILREATH & ASSOCIATES, PLLC
550 Main Avenue, Suite 600
Knoxville, Tennessee 37902

<u>VIA EMAIL</u>
[ksuggs@jjsjustice.com]

Kenneth M. Suggs, Esq.
Jason B. Penn, Esq.
Tara C. Posner, Esq.
JANET, JENNER & SUGGS, LLC
Commerce Center E., Ste. 165
1777 Reisterstown Road
Baltimore, Maryland 21208

> RE: *Fritz et al. v. St. Paul Fire and Marine Insurance Co.*
> Docket No. 3:17-CV-433

Dear Counsel:

We are in receipt of your correspondence dated February 27, 2019, regarding St. Paul's prior discovery responses. Please consider this as St. Paul's response to the issues discussed in that letter.

The privilege log is below, and we have amended the answer to J. Fritz's Interrogatory No. 11. Additionally, we are providing amended or supplemental answers to other interrogatories, as noted below, based on our ongoing investigation of this case. Finally, we are enclosing a supplemental production of documents Bates numbered SP-FRITZ000106-000122.

## REVISED ANSWERS TO INTERROGATORIES PROPOUNDED BY
## JESSICA FRITZ

3.     Describe the circumstances of how the Insured came to be a named insured under the policy at issue in this case (evidence no. ZUP14S9493712NF-52908).

**Answer**:  St. Paul objects as the Interrogatory partially seeks information that is within the possession and/or knowledge of Plaintiffs, including but not limited to Plaintiffs' relationship and dealings with McGowan Program Administrators and Madison Insurance Group.  Without waiving the foregoing, at the time in question, McGowan Program Administrator was the program administrator with respect to the program in question, Community Associations PG INC (LRO).  As program administrator, McGowan had authority to accept applications, price policies, underwrite policies, issue policies, and provide policyholder services for Risk Purchasing Group products, which includes the program policy at issue.  McGowan contracts with retail agents and wholesale brokers to distribute and accept submissions for McGowan Risk Purchasing Group products.  Upon information and belief, the Insured (Laxmiji, LLC) worked with its retail agent, Madison Insurance Group, to obtain policies.  Madison Insurance Group could not, and did not, solicit an application for the policy at issue directly from St. Paul; nor was Madison Insurance Group acting through its agency agreement with Travelers, as the agency relationship between Madison Insurance Group and Travelers was inapplicable to program policies.  Instead, upon information and belief, Madison Insurance Group worked through a wholesaler broker, Appalachian Underwriters, to obtain the program policy for Laxmiji, LLC from McGowan.  Madison Insurance Group did not have a relationship with McGowan; Appalachian Underwriters, however, did have a relationship with McGowan as a wholesale broker appointed by McGowan.  On or around June 27, 2012, McGowan received the umbrella application submission for Laxmiji, LLC directly from Appalachian Underwriters.  McGowan then provided a quote to Appalachian Underwriters.  At the same time, McGowan sought authorization to Indicate / Quote / Bind from Travelers Insurance Company, and the authorization was provided by Vanessa Chan.  McGowan bound the account with Appalachian Underwriters effective 6/28/12 through 6/28/13. The policy number was ZUP14S9493712 NF 52908.  On 6/26/13, McGowan received authorization to Indicate / Quote / Bind the policy renewal from Vanessa Chan of Travelers Insurance Company.  McGowan bound the renewal account with Appalachian Underwriters effective 6/28/13 through 6/28/14. The policy number was ZUP14S9493712NF-52908.

4.     Describe the relationship between Madison Insurance Group and you during the policy period.

**Answer**:  An agency contract between Madison Insurance Group Inc. and The Travelers Indemnity Company was in effect at the inception of and for the duration of the 6/29/2013 to 6/28/2014 policy period.  The agency contract authorized Madison Insurance Group to solicit applications for policies and bind, execute, and service policies.  It did not, however, authorize Madison Insurance Group to act as agent for St. Paul/Travelers with respect to claims.

Additionally, the agency contract between Madison Insurance Group and Travelers had no application to a program policy such as the one the Insured here obtained.

7.      How was Madison Insurance Group compensated when it sold a policy you issued during the policy period?

**Answer**:  St. Paul objects to this Interrogatory as it requests compensation information that is irrelevant to the claims in this litigation because it has no relation to any claims or defense as to whether Plaintiffs' claims are covered by the terms of the policy.  Further, St. Paul objects as the Request seeks confidential information regarding St. Paul's relationship with entities not parties to this litigation.   Without waiving the foregoing, upon information and belief, Madison Insurance Group may have been compensated by Appalachian Underwriters, which would have been compensated by McGowan.

8.      Please state the amount and nature of compensation paid by you to Madison Insurance Group during the policy period.

**Answer**:  St. Paul objects to this Interrogatory as it requests compensation information that is irrelevant to the claims in this litigation and requests confidential information regarding St. Paul's relationship with entities not parties to this litigation.  Without waiving the foregoing, St. Paul did not compensate Madison Insurance Group for the program policy at issue.

11.      Have you ever authorized Madison Insurance Group to accept notice of a potential claim against one of your insureds, or ratified its acceptance of such notice?  If so, describe the circumstances of that authority.

**Answer**:  St. Paul objects to this Interrogatory on the basis that it is irrelevant, overly broad, and unduly burdensome.   It seeks company-wide information as to any notice related to any policyholder, company-wide, irrespective whether it involved an underlying primary policy versus an umbrella or excess policy, or involved a Tennessee policyholder or policyholder in another state or country.   In this case, the policy at issue was part of McGowan's Risk Purchasing Group products, written through McGowan Program Administrators.  McGowan could accept notice of a claim and was required to report such claims to Travelers.  Madison Insurance Group, however, did not have any authority to accept notice of any claims for such program policies.  Further, here the policy provisions required Laxmiji, LLC to notify The Travelers Companies specifically of potential claim, claim, litigation, or judgment.  No such notice was provided.

14.      Identify any person or entity with whom you had a relationship during the policy period who became aware of a potential claim against the Insured for damages resulting from carbon monoxide exposure.

**Answer**:  St. Paul had a relationship with Madison Insurance Group, Oak Ridge, TN, but the relationship was not applicable to the program policy at issue.

16.   Describe any and all relationships between you and McGowan Program Administrators during the policy period.

**Answer**:  From approximately 2004 through 2017, McGowan was a program administrator of Travelers for a variety of umbrella programs, including the program in question, Community Associations PG INC (LRO).  As program administrator, McGowan had authority to accept applications, price policies, underwrite policies, issue policies, and provide policyholder services for Risk Purchasing Group products, which includes the program policy at issue.

## PRIVILEGE LOG

Documents that are being withheld from St. Paul's discovery responses because they are protected from disclosure on the basis of privilege are identified below.  We reserve the right to supplement the privilege log as necessary.

| Description | Privilege |
|---|---|
| St. Paul/Travelers' claim file materials for the time period subsequent to the filing date of the instant lawsuit.  These materials were prepared in anticipation of litigation and include communications between Travelers and its counsel. | Attorney-client privilege and/or Work Product |
| File of Black McLaren Jones Ryland & Griffee | Attorney-client privilege and/or Work Product |
| File of Spicer Rudstrom | Attorney-client privilege and/or Work Product |
| File of St. Paul/Travelers' legal department | Attorney-client privilege and/or Work Product |

Counsel
March 4, 2019
Page 5

        We trust this letter should resolve the issues raised.
Should you have any questions or want to discuss these further,
please let me know.

                              Sincerely,

                              Amy Worrell Sterling

AWS/clw
Enclosures

cc:  Michael G. McLaren, Esq. (Via Email)